IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| In re | ) Case No. 3:25-bk-31122-SHB |
| | ) |
| ECHO MAV, LLC, | ) Chapter 7 (Involuntary) |
| | ) |
| Alleged Debtor. | ) Judge Bauknight |

### DECLARATION OF DENNY EUGENE TREY SPRINKLE, III IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION

Echo MAV, LLC, a New Mexico LLC with its Principal Office in Lubbock, Texas

1. My name is Denny Eugene Trey Sprinkle III. I am over the age of eighteen years, am competent to testify, and have personal knowledge of the facts stated in this Declaration.

2. I reside in Lubbock, Texas.

3. In June 2022 William Jeffrey Knowles ("Knowles") and I formed Echo MAV, LLC as a limited liability company organized under New Mexico Law ("Echo MAV").

4. Echo MAV is a technology development company focused on defense-oriented drone innovation and systems integration, including the design, prototyping, and commercialization of specialized hardware and software for military and tactical applications. Among other things, Echo MAV builds unmanned aerial vehicles (drones) designed for combat operations. Echo MAV serves numerous organizations of the United States Government as well as private customers.

5. In 2025 I became the sole owner of Echo MAV.

6. Echo MAV's principal place of business is, and always has been, in Lubbock, where I reside. Its phone number begins with area code 806, the area code for the Lubbock and Amarillo metro areas. Echo MAV's executives, including myself, its president, and its head of operations are all based in Lubbock. Its payroll is processed from Lubbock and its banking

relationships are with a Texas bank. As of June 12, 2025, Echo MAV had 10 employees based in the Lubbock area. Echo MAV's principal assets are located in Lubbock.

7. Echo MAV also has a flight testing center in Colorado Springs, Colorado which had 2 employees as of June 12, 2025, and an office in Knoxville, Tennessee having 4 employees as of June 12, 2025.

Echo MAV's Purchase of Horizon31's Assets

8. On March 10, 2023, Echo MAV entered into an Asset Purchase Agreement ("APA") with Horizon31, LLC, a Tennessee limited liability company ("Horizon31") and its members, Brad Stinson ("Stinson") and Andrew Harter. Within the APA, Echo MAV purchased substantially all business assets of Horizon31. A true copy of the APA is attached as Exhibit 1 to this Declaration.

9. The purchase price for Horizon31's assets at the time of the APA was $2,000,000. Echo MAV paid Horizon31 $500,000 cash at closing and gave Horizon31 a $1.5 million promissory note (the "Note") which called for two payments, one on the first anniversary of closing and one on the second anniversary of closing. A true copy of the Note is attached as Exhibit 2 to this Declaration.

10. Knowles also guaranteed repayment of the Note.

11. The first payment under the Note was due February 17, 2024, and the second payment was due February 17, 2025.

12. Echo MAV made partial payments on the Note in the amount of $80,000 on November 13, 2024 and $100,000 on November 15, 2024.

13. Though Echo MAV purchased substantially all of Horizon31's assets, it was

primarily interested in acquiring two properties – 1) Horizon31's PixC4 line of circuit boards and related software (the "PixC4 Line"), and 2) Horizon31's fully-assignable patent and copyright license agreements with UT Battelle, LLC (the "UT Battelle Contracts").

14. At the closing of the APA, Echo MAV valued the PixC4 Line at approximately $500,000 based on an industry-standard 10x multiplier of annual net revenue generated by the products.

15. UT Battelle, LLC is a joint venture between the University of Tennessee and Battelle Memorial Institute. Its sole purpose is to manage and operate the Oak Ridge National Laboratory for the United States Department of Energy.

16. The UT Battelle Contracts give the holder a license to use over 250 unique software and hardware designs. Echo MAV estimated, conservatively, that to reproduce those designs would cost a minimum of $1.5 million. Thus the total purchase price for Horizon31's assets was $2 million.

17. To secure the Note payments, Echo MAV granted Horizon31 "a first priority security interest and lien in the Assets", which are defined as all of Horizon31's "personal property, furniture, fixtures, equipment, tools, vehicles, inventory, patents, trademarks, license agreements, contract rights, customer lists, telephone numbers, accounts receivable, websites, domain names, software and all associated intellectual property rights, and all other tangible and intangible property used in operating the Business, including goodwill" but excluding Horizon31's bank accounts, cash, organizational documents, books and records. APA, §§ 2-3.

18. Echo MAV and Horizon31 signed a separate Security Agreement clarifying that Horizon31's collateral includes the "tangible and intangible personal property acquired by" Echo

MAV under the APA. A true copy of the Security Agreement is attached as <u>Exhibit 3</u> to this Declaration.

19. The Security Agreement does not include any language or reference to Horizon31 or Stinson obtaining a security interest in "after-acquired property," "newly developed intellectual property," "derivative works," or "future revenue streams" of Echo MAV. Rather, the collateral description is limited to assets acquired by Echo MAV at the time of the closing of the APA.

<u>Post-Transaction Events</u>

20. After the closing of the APA, Echo MAV hired Stinson to serve as its Chief Technology Officer ("CTO"). He worked out of Echo MAV's Knoxville office. Stinson brought with him Horizon31's existing GitHub and CircuitHub accounts, which were in his individual name and for which he controlled the login and password information.

21. GitHub is a repository for software source code. Echo MAV stores software code which is proprietary and critical to the development of its products on GitHub.

22. CircuitHub is a company which quickly manufactures custom-designed circuit boards. Echo MAV uses CircuitHub to generate boards for prototyping and testing new applications.

23. At no time after the closing did Stinson switch Horizon31's GitHub and CircuitHub accounts into Echo MAV's name. He kept the accounts in his individual name and maintained control over the logins and passwords for the accounts.

24. As CTO Stinson also had access to all of Echo MAV's other critical accounts and systems. He had access to a company American Express card with no spending limit. He also had

4

access to Echo MAV's Quickbooks and WooCommerce[1] accounts. Among other things, his Quickbooks access would have allowed him to view all of Echo MAV's accounts payable – in other words, at any time Stinson could determine how many creditors Echo MAV had.

25.     Post-closing, Echo MAV rebranded the PixC4 Line into the EchoPilot AI and EchoPilot Carrier boards. It also invested several million dollars of its own capital in research, development and testing to improve the line. In 2025 to date, Echo MAV has sold over 500 EchoPilot AI boards and 500 EchoPilot Carrier boards. At current prices, and based on the same valuation multiplier Echo MAV applied at closing, the value of the PixC4 Line is approximately $3 million today. In fact, based on two recent, multi-million dollar sales contracts which are being finalized, I believe the value of the line is actually much higher.

26.     Post-closing, Horizon31 never delivered to Echo MAV the files for the 250 unique software and hardware designs which Horizon31 represented were available under the UT Battelle Contracts. For this reason Echo MAV has been unable to monetize its rights under the UT Battelle Contracts. However, I believe the value of the UT Battelle Contracts remains at least $1.5 million today, assuming that the 250 design files are available and can be accessed.

27.     Following the sale, Echo MAV also independently developed and launched a new generation of drone products, including the Monark Drone platform, using proprietary systems and personnel who were not employed by Horizon31. These developments were funded solely by Echo MAV, without contribution or involvement from Stinson or Horizon31.

28.     I believed that Knowles was going to source capital to make the Note payments to

---

[1] The e-commerce platform Echo MAV uses.

5

Horizon31. In fact, he did not do that, and Echo MAV did not make the entire February 2024 or February 2025 payments timely, although it did pay $180,000 toward the Note in November 2024 as cash was available.

29. On or about March 21, 2025, Stinson caused Horizon31 to sue Echo MAV and Knowles in the Circuit Court for Knox County, Tennessee, Case No. 3-62-25 (the "Knox County Lawsuit"), to collect on the Note.

30. To resolve the Knox County Lawsuit, Echo MAV and Knowles gave Horizon31 an Agreed Judgment in the amount of $1,452,385.22, plus $4,600 in attorney's fees, to be held and not filed before May 21, 2025.

31. I worked diligently to source new capital for Echo MAV to permit it to pay Horizon31 in full before entry of the Agreed Judgment. However, I was not able to secure sufficient capital by May 21.

Stinson's Overreaching and Tortious Conduct

32. In September 2024, when Stinson was working as Echo MAV's CTO, he set up a company called BS Solutions.[2] He then convinced Mike Hodges, Echo MAV's President, to cause Echo MAV to lease a 1997 Toyota Land Cruiser from BS Solutions. A copy of this Vehicle Lease Agreement is attached as Exhibit 4 to this Declaration.

33. The Vehicle Lease Agreement provides that the Land Cruiser has 190,000 miles as of the signing of the lease. Exh. 4, ¶ 1. According to Kelley Blue Book, a 1997 Toyota Land Cruiser with 190,000 miles in good condition was worth approximately $8,872 in a private sale.

---

[2] As detailed below, I would learn that Stinson later renamed this company to "Drones From Scratch LLC" days after he resigned from Echo MAV.

*See* *https://www.kbb.com/toyota/land-cruiser/1997/sport-utility-4d/?vehicleid=8469&mileage=190000&vin=jt3hj85j0v0180088&offeroptions=true&modalview=false&intent=trade-in-sell&pricetype=private-party&condition=good&options=313959%7Ctrue%7C313961%7Ctrue%7C313956%7Ctrue%7C6295953%7Ctrue%7C6295953%7Ctrue%7C6295999%7Ctrue&extcolor=blue&subintent=sell&entry=defymmt,* accessed July 2, 2025.

34. The Vehicle Lease Agreement calls for 12 monthly payments of $750.00 each, or $9,000, which is more than the Land Cruiser is worth. Exh. 4, ¶ 3.

35. The Vehicle Lease Agreement contemplates that "any EchoMAV, LLC employee with a valid driver's license" may use the Land Cruiser. Exh. 4, ¶ 7. In fact, however, EchoMAV rarely used the Land Cruiser because it was in the possession of Stinson's children for most of the lease term.

36. Stinson, individually, gave notice that he was terminating the Vehicle Lease Agreement for default by the lessee on May 31, 2025. Later, I learned that Stinson has always been the registered owner of the Land Cruiser, and it was never registered to BS Solutions.

37. On April 18, 2025, Echo MAV and Stinson entered into a Confidential Information Non-Disclosure and Turnover Agreement with Employee/Agent ("NDA"). A true copy of the NDA is attached as Exhibit 5 to this Declaration.

38. Within the NDA Stinson agreed, among other things, that:

a. All intellectual property rights, claims and entitlements derived from his work for Echo MAV concerning Echo MAV's business activities would be considered Echo MAV's sole and exclusive property;

7

  b. He would not remove or disclose any Echo MAV confidential information or trade secrets without Echo MAV's prior written consent;

  c. He would maintain Echo MAV's confidential information and trade secrets in strict confidence and not use any such information for any purpose except Echo MAV's business activities; and

  d. He would not solicit or accept any business from Echo MAV's suppliers and purchasers for at least two years after his employment terminated.

NDA, ¶¶ 2, 4, 5.

 39. The NDA was negotiated and executed by Echo MAV at its principal office in Lubbock. NDA, ¶ 9.

 40. After agreeing to resolve the Knox County Lawsuit by giving Horizon31 an Agreed Judgment to be held for 60 days, I began negotiating with Stinson for a plan to repay the remaining amounts due under the Note.

 41. I was in regular communication with Stinson until May 20, 2025, when he suddenly ended discussions and resigned as Echo MAV's CTO. He then began improperly interfering with Echo MAV's business and its relationships with employees, customers and vendors.

 42. For example, after having resigned as CTO, Stinson entered Echo MAV's office premises without notice or permission and proceeded to restrict Echo MAV's access to its core internal systems, including disabling access to Slack communications, GitHub code repositories, and cloud-based vendor accounts used in the development and operation of Echo MAV's product lines. He deleted or disabled administrative user accounts tied to key engineering tools and refused to return credentials necessary for manufacturing relationships with CircuitHub and other

8

suppliers. He told Echo MAV's employees he was going to resign under Horizon31 was paid and would serve cease and desist orders upon Echo MAV and each employee.

43. He also contacted military procurement officials affiliated with Fifth Special Forces Group, CMI2, Darley Defense and Persistent Systems—entities with which Echo MAV had active proposals or relationships. Specifically, I am aware that he called Rob Leach of CMI2 and Chris Knapp of Persistent Systems and gave both the impression that Echo MAV would not exist any longer. He contacted a representative of Darley Defense and tried to intercept a payment owed to Echo MAV and convince Darley to pay Horizon31 instead.

44. Stinson also deleted Echo MAV's internal files and records critical to the Monark Drone development program. He disabled certain core cloud repositories, deleted user access credentials, and restricted access to manufacturing files, design data, and vendor platforms. These acts resulted in the temporary shutdown of Echo MAV's prototyping pipeline and required substantial resources to partially recover. Echo MAV is still investigating the full extent of the data loss.

45. After having resigned, Stinson directed an Echo MAV employee to take actions to prevent myself and Echo MAV's web developers from accessing Echo MAV's website. He also erased hard drives on four Echo MAV computers, copied eight Echo MAV thumb drives and deleted multiple Echo MAV files.

46. Under these circumstances, Echo MAV did not make payment under the Agreed Judgment on May 21, 2025. The same day, Horizon31 filed the Agreed Judgment in the Knox County Lawsuit.

47. Immediately thereafter, Stinson again returned to Echo MAV's Knoxville office

without authorization and told multiple Echo MAV engineers to stop working because all of Echo MAV's property now belonged to him. That is not correct because Echo MAV never granted Horizon31 a security interest in all of its property. Horizon31's security interest applies only to property purchased by Echo MAV from Horizon31 under the APA, and any proceeds or products of that property. Echo MAV has a large amount of valuable property, including intellectual property, which it developed completely independently of Horizon31. Stinson's inaccurate and overreaching statements have caused confusion and apprehension among Echo MAV's employees, who do not want to be accused of breaking the law or acting improperly simply for doing their jobs. Four engineers who were under Stinson's supervision have resigned. I am aware that another is interviewing for other jobs because of false representations Stinson has made about Echo MAV and its executives.

48. On May 23, 2025, an attorney representing Horizon31 sent Echo MAV's attorney a letter notifying Echo MAV that Horizon31 had filed the Agreed Judgment and demanding that Echo MAV surrender to Horizon31 all collateral under the Security Agreement within two business days.

49. On May 28, 2025, an attorney representing Horizon31 served post-judgment interrogatories and requests for production of documents on Echo MAV in the Knox County Lawsuit.

Stinson's Competing UAV Business

50. I have discovered that on September 23, 2024, Articles of Organization for a company called "BS Solutions LLC" were filed with the Office of the Tennessee Secretary of State.

51.     On May 27, 2025, (six days after Stinson came to Echo MAV's Knoxville office and declared that all of Echo MAV's property was now his) Articles of Amendment were filed for BS Solutions LLC to change its name to "Drones from Scratch LLC."

52.     As of June 26, 2025, the principal office address and mailing address for Drones from Scratch LLC is the same address in Knoxville which is listed in the APA as Stinson's notice address.

53.     I have also learned that Stinson has created a website called https://dronesfromscratch.com (accessed June 26, 2025). Dronesfromscratch.com advertises the creation of complex unmanned systems and software solutions which are extremely similar to the products Echo MAV offers.

54.     The "Team" page at Dronesfromscratch.com identifies "Brad S." (Stinson) as the "Founder / Electrical Engineer" and represents that he has "recently been the CTO for two successful drone companies."

This Involuntary Bankruptcy Filing

55.     On June 13, 2025, I received notice that Horizon31 had filed this involuntary bankruptcy proceeding against Echo MAV in this Court.

56.     As of June 12, 2025, Echo MAV had 27 unsecured creditors. A list of those creditors is attached as Exhibit 6 to this Declaration.

57.     Except for the debts to Horizon31 and BS Solutions n/k/a Drones From Scratch, LLC, Echo MAV is paying its debts as they come due. And Echo MAV is acting working to source capital to repay the Horizon31 debt.

11

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 3, 2025 at Lubbock, Texas.

_____
Denny Eugene Trey Sprinkle III

12

## CERTIFICATE OF SERVICE

  I certify that I served a true and correct copy of the foregoing upon the following, and all persons registered to receive electronic notice in this case, via the Court's CM/ECF system on the 3rd day of July, 2025:

| | |
|---|---|
| Maurice K. Guinn | Office of the United States Trustee |
| Gentry Tipton McLemore | 800 Market Street, Suite 114 |
| Riverview Tower, Suite 2300 | Knoxville, TN 37902 |
| 900 South Gay Street | |
| Knoxville, TN 37902 | |

                /s/ Stephen M. Montgomery