## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** entered into the  10th  day of  March , 2023 (the "Effective Date"), by and between **ECHO MAV, LLC**, a New Mexico limited liability company ("Purchaser"), **HORIZON31, LLC**, a Tennessee limited liability company ("Seller"), **BRAD STINSON** and **ANDREW HARTER** ("Members").

### W I T N E S S E T H:

WHEREAS, Seller owns certain tangible and intangible property used in operating its business selling certain hardware and software used for the operation of uncrewed systems (the "Business"), all as more particularly described below; and

WHEREAS, Purchaser desires to purchase and Seller desires to sell the assets of the Business, subject to the terms, conditions, and exceptions set forth below;

WHEREAS, Members join in this Agreement for the sole purpose of conveying any and all personal goodwill they possess as the Members of Seller; and

WHEREAS, the parties further desire to make certain warranties, representations, covenants, and other agreements, all as specifically set forth below;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth below, and other good and valuable consideration, the receipt, sufficiency, and adequacy of all of which is hereby acknowledged, the parties agree as follows:

1.      **Closing**.  Closing shall occur simultaneous with the parties' execution and delivery of counterparts of this Agreement (the "Closing").

2.      **Sale and Purchase of Assets**.  Seller and Members agree to sell, convey, transfer, assign, and deliver to Purchaser in exchange for the purchase price described herein, and Purchaser agrees to purchase and accept, at Closing, the following assets:

(a)            **All Assets of the Business Owned by Seller**:  Seller is the fee simple owner of all personal property, furniture, fixtures, equipment, tools, vehicles, inventory, patents, trademarks, license agreements, contract rights, customer lists, telephone numbers, accounts receivable, websites, domain names, software and all associated intellectual property rights, and all other tangible and intangible property used in operating the Business, including goodwill.  Further, the Seller's assets include but are not limited to those items more particularly described on Exhibit A attached hereto and incorporated herein by reference (hereinafter the "Assets").

(b)            **Excluded Assets**.  Seller shall retain its bank accounts, cash, organizational documents, books and records.

3.      **Purchase Price**.  In exchange for the Assets, Purchaser shall deliver to Seller the total sum of Two Million Dollars ($2,000,000.00) (the "Purchase Price").  The Purchase Price shall be payable as follows:

(a)      Five Hundred Thousand Dollars ($500,000.00) to be paid to Seller, in cash, as of Closing;

(b)      By delivering a promissory note (the "Note"), providing for payments of:

(i)      Seven Hundred Fifty Thousand Dollars ($750,000.00) to be paid to Seller as of the first anniversary of Closing;

(ii)      Seven Hundred Fifty Thousand Dollars ($750,000.00) to be paid to Seller as of the second anniversary of Closing.

All dollar amounts are intended to mean U.S. dollars.  To secure payment of the Note, Purchaser shall execute and deliver a security agreement granting Seller a first priority lien and security interest in the Assets along with the personal guaranty of William Knowles, principal of Purchaser.

4.            **No Assumption of Liabilities**.  Purchaser is not assuming or undertaking any liability or

obligation of Seller except as to the license agreements expressly referenced in paragraph 5 and Seller shall

remain fully and solely liable for any and all other debts, claims, liabilities or obligations of Seller.  Except as to the license agreements, Seller covenants and agrees to pay Seller's debts and obligations after Closing as same become due in order to protect the goodwill being acquired by Purchaser.

5.    **UT-Battelle License Agreements**.  This Agreement is contingent on the assignment of that certain Limited Exclusive Commercial Field of Use Patent License Agreement between Seller and UT-Battelle, LLC and a Limited Exclusive Commercial Copyright License Agreement, both of which were last dated May 19, 2020 (the "Licenses").  Purchaser shall assume all of the duties and obligations of Seller under the Licenses as of Closing, including the obligation to pay royalties to UT-Battelle, pursuant to an Assignment and Assumption Agreement to be entered into as of Closing.  Royalties due for the year in which Closing occurs shall be paid by Purchaser.

6.    **Representations and Warranties of Seller**.  Seller hereby represents and warrants as follows:

(a)    Seller is a Tennessee limited liability company in good standing under the laws of the State of Tennessee.

(b)    Seller has good and marketable title to the Assets and shall convey fee simple title to the Assets free and clear of any lien, claim, encumbrance, charge, security interest, or other interest.

(c)    Seller has been duly and legally authorized by its members to execute and perform this Agreement, and no further action shall be necessary for the execution or performance of this Agreement.

(d)    There is presently no action, suit, or proceeding, pending against the Seller which could affect the transaction contemplated by this Agreement, or any of the Assets, and that there is no pending attachment or charge against any of the Assets.

(e)    Excluding the Licenses, the Closing of the transaction described in this Agreement will not result in a breach of any of the terms, conditions, or provisions of, nor constitute a default under, any contract, agreement, loan agreement, or security agreement that is now in existence between Seller and any other person, firm, or entity, nor constitute an event which, with the passage of time or the giving of notice, may become an event of default thereunder.

2

1. (f) Excluding the Licenses, no consent, waiver, approval, order or authorization of, or registration, declaration or filing with any person, entity or agency, is required in connection with the execution and delivery of this Agreement or the Closing Documents or consummation of the transactions contemplated hereby or thereby.

(g) Seller is not currently delinquent in the payment or reporting to any federal, state, or local taxing authority, no audit of any tax return filed by Seller is in progress, and there are no assessments or liens, either pending or, to Seller's knowledge, threatened, by any federal, state, or local taxing authority against Seller for delinquent taxes.

(h) No landlord or property owner has a basis to claim any lien in the Assets, nor does any third party have any claim on the Assets that would prevent the transfer of title or possession of the Assets and physical removal of any tangible Assets as of Closing.

2. (j) The Assets do not include any leased personal property.

3. (k) No claims have been made, or, to Sellers' Knowledge, threatened against Seller alleging that any services provided or products manufactured or sold by Seller or process used by Seller or any intellectual property used by Seller is being provided, sold or used in violation of any rights of any other person or in violation of any applicable laws.

(l) There is no broker or agent of Seller entitled to any commission, finder's fee, or similar compensation as a result of the sale of the Assets to Purchaser.

7. **Representations and Warranties of Purchaser**. Purchaser hereby represents and warrants as follows:

(a) Purchaser is a New Mexico limited liability company in good standing under the laws of the State of New Mexico;

(b) The execution and performance of this Agreement has been duly and legally authorized by Purchaser's members and no further action is necessary for such execution and performance; and

3

(c)     There is presently no action, suit, or proceeding, pending against the Purchaser which could affect the transaction contemplated by this Agreement;

(d)     There is no broker or agent of Purchaser entitled to any commission, finder's fee, or similar compensation as a result of the sale of the Assets to Purchaser.

8.     **Indemnifications by Seller**.  Seller shall indemnify and hold harmless Purchaser ("Purchaser" shall throughout this paragraph 8 include Purchaser's members, directors, managers, agents and representatives), and shall reimburse Purchaser for, any cost, damage, injury, diminution in value, disbursement, expense, liability, loss, claim, deficiency or penalty of any kind or nature, including but not limited to damages, punitive damages, court and litigation costs, remediation expenses, payments or refunds made to customers, suppliers, or employees, interest, and penalties in connection with:

(a)     any inaccuracy in any of the representations and warranties of Sellers in this Agreement;

(b)     any actions, omissions, or facts inconsistent with any such representations or warranties;

(c)     any failure by Seller to perform or comply with any material provision of this Agreement; and

(d)     any act, omission, error, or claim related in any way to the Assets or Seller which occurred or arose prior to the Effective Date, including but not limited to any claim or debt arising of Seller's business through and including the Effective Date, except for the liabilities assumed by Purchaser pursuant to the terms of this Agreement.  Provided, however, this indemnity shall not be applicable:  (i) in the event any claimed damage arises out of the misconduct or negligence of Purchaser or its agents, or (ii) to any amount of the claim that exceeds the amount of the Purchase Price paid to Seller.

9.     **Indemnifications by Purchaser**.  Purchaser shall indemnify and hold harmless Seller, ("Seller" shall throughout this paragraph 9 include Seller's members, directors, managers, agents and representatives), and shall reimburse Seller for, any cost, damage, injury, diminution in value, disbursement, expense, liability, loss, claim, deficiency or penalty of any kind or nature, including but not limited to damages, punitive damages, court and litigation costs, remediation expenses, payments or refunds made to customers, suppliers, or employees, interest, and penalties in connection with:

(a)    any inaccuracy in any of the representations and warranties of Purchaser in this Agreement;

(b)    any actions, omissions, or fact inconsistent with any such representations or warranties;

(c)    any failure by Purchaser to perform or comply with any material provision of this Agreement; and

(d)    any act, omission, error, or claim in connection with the Assets or Purchaser, which occurs or arises from and after the Effective Date, including but not limited to any claim or debt arising out of Purchaser's ownership and/or use of the Assets from and after the Effective Date.  Provided, however, this indemnity shall not be applicable in the event any claimed damage arises out of the misconduct or negligence of Sellers or their agents.

10.    **Documents to be Exchanged at Closing**.

(a)    Seller shall deliver to Purchaser at Closing the following documents:

(i)    a bill of sale transferring the Assets to Purchaser in accordance with this Agreement;

(ii)    an assignment and assumption agreement for the Licenses;

(iii)    a copy of the fully executed resolution or action by written consent by which the transactions contemplated and described herein have been fully authorized by Seller's member(s);

(iv)    a certificate of good standing or other official documentation of the validity of the representation in subparagraph 6(a).

(b)    Purchaser shall deliver to Seller at Closing the following documents:

(i)    the executed, original Note;

(ii)    the executed, original Security Agreement;

(iii)    the executed, original Personal Guaranty;

(iv)    the assignment and assumption agreement for the Licenses;

(v)    a copy of the fully executed resolution or action by written consent by which the transactions contemplated and described herein have been fully authorized by Seller's member(s);

(vi)    a certificate of good standing or other official documentation of the validity of the representation in subparagraph 7(a).

This Agreement and all documents referred to herein may collectively be referred to as the "Closing Documents."

11.    **Further Actions**.  Each party hereto agrees to execute, acknowledge, deliver, file, and record such further certificates, amendments, instruments, and documents, and to do all such other acts and things as may be required by law or as may be necessary or advisable to carry out the intention and purposes of this Agreement.

12.    **Survival**.  All representations, warranties, made by any party hereto under this Agreement and in connection with the transactions contemplated herein, or in any document delivered or executed in pursuance of this Agreement, shall survive Closing and the delivery and acceptance of the bill of sale for a period of one (1) year.  The provisions of paragraphs 8, 9, 11, 14, 16, 20-23 shall survive Closing for the maximum period allowed by applicable law.

13.    **Binding Effect**.  This Agreement shall be binding upon, and inure to the benefit of the parties' successors, assigns, heirs and personal representatives.

14.    **Taxes**.  Except as expressly provided herein, each party shall be responsible for any federal, state, or local taxes which arise as a result of this Agreement.

15.    **Notices**.  All notices, requests and demands which may be or are required to be sent pursuant to this Agreement shall be in writing and shall be deemed to be effectively given if made as follows:

(a)    If hand-delivered or sent by fax, when received with proof of receipt being the obligation of the sending party, or

(b)    If mailed, five (5) days after being deposited postage prepaid, in the United States mail, and sent certified mail, return receipt requested, and addressed as follows:

If to Seller or Members:

Horizon31, LLC
632 Tree Ridge Road
Knoxville, Tennessee  37922
ATTN:  Brad Stinson

Brad Stinson

6

2539 Shady Meadow Ln
Knoxville, Tennessee 37932

Andrew Harter
632 Tree Ridge Road
Knoxville, Tennessee 37922

If to Purchaser:

Echo MAV, LLC
℅ William Knowles
8635 W Sahara Ave, Unit 443
Las Vegas, NV 89117

4.          16.          **Costs, Expenses, Commissions**.  The costs and expenses incurred in connection

with this Agreement, the Closing Documents and the transactions contemplated hereby and thereby shall

be paid as follows:

(a)      Purchaser shall pay the costs and expenses it incurs in connection with this Agreement, the Closing

Documents and the transactions contemplated hereby and thereby including, without limitation, fees and

disbursements of counsel, financial advisors, accountants and brokers or finders hired by Purchaser.

(b)      Seller shall pay the costs and expenses it incurs in connection with this Agreement, the Closing

Documents and the transactions contemplated hereby and thereby including, without limitation, fees and

disbursements of its counsel, financial advisors, accountants and brokers or finders hired by Sellers.

5.          (c)      Seller shall be solely responsible for the payment of any and all amounts due or

claimed by third parties to satisfy any liens, claims or encumbrances against the Assets.

(d)          Purchaser shall pay the cost of perfecting Seller's lien retained in the Assets.

(e)          Any ad valorem or similar tax attributable to the Assets shall be prorated at Closing and the

net amount due Purchaser or Seller, as the case may be, shall be paid at Closing.

6.          17.          **Indulgences, Etc**.  Neither the failure nor any delay on the part of any party to

exercise any right, remedy, power or privilege under this Agreement or any of the Closing Documents shall

operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege

or any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

7.          18.          **Mutual Drafting**.  This Agreement is the result of the joint efforts of the parties hereto and each provision has been subject to the mutual negotiation and agreement of the parties and there shall be no construction against any party based on any presumption of that party's involvement in the drafting of this Agreement.

8.          19.          **Provisions Several**.  The provisions of this Agreement are independent of and several from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

20.          **Attorneys Fees**.  In the event that litigation is commenced by any party hereto to enforce any of the provisions of this Agreement, the prevailing party in any such litigation shall be entitled to recover from the non-prevailing party the attorneys fees and litigation expenses incurred by said prevailing party.

21.          **Exclusive Venue**.  The sole and exclusive forum and venue for any litigation among the Parties shall be the state or federal courts with jurisdiction in Knox County, Tennessee.  The parties stipulate and agree that this Agreement was entered into in Knox County, Tennessee and the courts therein shall have personal jurisdiction over the parties.

22.          **Jury Trial Waiver**.  TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING UNDER, OUT OF, OR OTHERWISE RELATING TO THIS AGREEMENT.

9.          23.          **Miscellaneous**.  This Agreement (including the documents attached hereto) contains the entire agreement between the parties hereto with respect to the transactions contemplated by this Agreement and supersedes all prior written or unwritten arrangements or understandings with respect thereto.  The descriptive headings of this Agreement are for convenience only.  Words used herein

DocuSign Envelope ID: 03BB189D-9F77-4230-AF67-CB48FCE71199

regardless of the number and gender specifically used shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context requires. This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument.  This Agreement shall be governed by and in accordance with the substantive, internal laws of the State of Tennessee.  This Agreement may not be modified, amended or revoked, except in a writing signed by all parties.  This provision may not be orally waived.

**PURCHASER**:

ECHO MAV, LLC, a New Mexico limited liability company

By: _____

Its: Manager


**SELLER:**

HORIZON31, LLC, a Tennessee limited liability company

By: _____

Its: Member


**MEMBERS:**

_____
Brad Stinson

_____
Andrew Harter