**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

| | | |
|---|---|---|
| In re | ) | **Case No. 3:25-bk-31122-SHB** |
| | ) | |
| **ECHO MAV, LLC,** | ) | **Chapter 7 (Involuntary)** |
| | ) | |
| Alleged Debtor. | ) | **Judge Bauknight** |

<u>**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PROCEEDING**</u>

Echo MAV, LLC, the alleged Debtor ("Echo MAV") files this Memorandum in Support of its Motion to Dismiss the Involuntary Bankruptcy Proceeding filed against it by Horizon31, LLC ("Horizon31").

## I.    <u>INTRODUCTION</u>

The involuntary bankruptcy process may be not abused by "a single recalcitrant creditor who is more concerned with a collection action than with the alleged debtor's well-being as a going concern." *In re Metrogate, LLC*, 2016 WL 3150177, at *13 (Bankr. D. Del. 2016). That is precisely what is going on in this case. The lone petitioning creditor, Horizon31, is controlled by Brad Stinson ("Stinson"), Echo MAV's former chief technology officer, who recently left Echo MAV to start a competing unmanned aerial vehicle business. On the way out the door, Stinson disabled Echo MAV's access to critical accounts, improperly solicited its customers, deleted files and lied to its employees, leading at least four of them to quit. Then, mere days after it began pursuing its state-court remedies, Horizon31 filed this involuntary petition as yet another improper means of pressuring Echo MAV.

Horizon31's inappropriate bankruptcy filing must be rejected, for several reasons. It filed this petition in the wrong bankruptcy court. It filed with an insufficient number of qualifying petitioning creditors. Horizon31 itself is not a qualifying creditor because its debt is fully secured.

1

Most importantly, it filed this petition in bad faith as a way to threaten Echo MAV with liquidation in order to draw the focus away from Stinson's mendacious, inexcusable conduct. This Court should not countenance Horizon31's abuse of the bankruptcy process. It should dismiss this petition and award Echo MAV costs, attorney's fees, and compensatory and punitive damages for this bad faith filing.

## II.    STATEMENT OF FACTS

Echo MAV was organized as an LLC under New Mexico law in 2022 by Trey Sprinkle ("Sprinkle") and William Knowles ("Knowles"). Declaration of Denny Eugene Trey Sprinkle, III in Supp. of Mot. to Dismiss ("Sprinkle Decl."), ¶ 3. Echo MAV is a technology development company focused on defense-oriented drone innovation and systems integration, including the design, prototyping, and commercialization of specialized hardware and software for military and tactical applications. *Id.*, ¶ 4. Echo MAV builds unmanned aerial vehicles (drones) designed for combat operations. *Id.* It serves numerous organizations of the United States Government as well as private customers. *Id.*

Echo MAV is now solely owned by Sprinkle, who lives in Lubbock, Texas. Sprinkle Decl., ¶¶ 2, 5. Echo MAV's principal place of business is, and always has been, in Lubbock. *Id.*, ¶ 6. Its phone number begins with area code 806, the area code for the Lubbock and Amarillo metro areas. *Id.* Echo MAV's executives, including Sprinkle, its president, and its head of operations are all based in Lubbock. *Id.* Its payroll is processed from Lubbock and its banking relationships are with a Texas bank. *Id.* As of June 12, 2025, Echo MAV had 10 employees based in the Lubbock area. *Id.* Echo MAV's principal assets are located in Lubbock. *Id.* Echo MAV also has a flight testing center in Colorado Springs, Colorado which had 2 employees as of June 12, 2025, and an office in Knoxville, Tennessee having 4 employees as of June 12, 2025. *Id.*, ¶ 7.

2

On March 10, 2023, Echo MAV entered into an Asset Purchase Agreement ("APA") with Horizon31 and its members, Stinson and Andrew Harter.  Sprinkle Decl., ¶ 8.  Within the APA, Echo MAV purchased substantially all business assets of Horizon31.  *Id.*  The purchase price for Horizon31's assets at the time of the APA was $2,000,000.  *Id.*, ¶ 9.  Echo MAV paid Horizon31 $500,000 cash at closing and gave Horizon31 a $1.5 million promissory note (the "Note") which called for two payments, one on the first anniversary of closing (February 17, 2024) and one on the second anniversary of closing (February 17, 2025).  *Id.*, ¶ 9, 11. Knowles also guaranteed repayment of the Note.  *Id.,* ¶ 10.  Echo MAV made partial payments on the Note in the amount of $80,000 on November 13, 2024 and $100,000 on November 15, 2024.  *Id.*, ¶ 12.

Though Echo MAV purchased substantially all of Horizon31's assets, it was primarily interested in acquiring two properties – 1) Horizon31's PixC4 line of circuit boards and related software (the "PixC4 Line"), and 2) Horizon31's fully-assignable patent and copyright license agreements with UT Battelle, LLC (the "UT Battelle Contracts").  Sprinkle Decl., ¶ 13.  At the closing of the APA, Echo MAV valued the PixC4 Line at approximately $500,000 based on an industry-standard 10x multiplier of annual net revenue generated by the products.  *Id.*, ¶ 14.  The UT Battelle Contracts give the holder a license to use over 250 unique software and hardware designs.  *Id.*, ¶ 16.  Echo MAV estimated, conservatively, that to reproduce those designs would cost a minimum of $1.5 million.  *Id.*  Thus the total purchase price for Horizon31's assets was $2 million.  *Id.*

To secure the Note payments, Echo MAV granted Horizon31 "a first priority security interest and lien in the Assets", which are defined as all of Horizon31's "personal property, furniture, fixtures, equipment, tools, vehicles, inventory, patents, trademarks, license agreements, contract rights, customer lists, telephone numbers, accounts receivable, websites, domain names, software and all associated intellectual property rights, and all other tangible and intangible

property used in operating the Business, including goodwill" but excluding Horizon31's bank accounts, cash, organizational documents, books and records. Sprinkle Decl., ¶ 17. Echo MAV and Horizon31 signed a separate Security Agreement clarifying that Horizon31's collateral includes the "tangible and intangible personal property acquired by" Echo MAV under the APA. *Id.*, ¶ 18. The Security Agreement does not include any language or reference to Horizon31 or Stinson obtaining a security interest in "after-acquired property," "newly developed intellectual property," "derivative works," or "future revenue streams" of Echo MAV. *Id.*, ¶ 19. Rather, the collateral description is limited to assets acquired by Echo MAV at the time of the closing of the APA. *Id.*

Post-closing, Echo MAV rebranded the PixC4 Line from Horizon31 into the EchoPilot AI and EchoPilot Carrier boards. Sprinkle Decl., ¶ 25. It also invested several million dollars of its own capital in research, development and testing to improve the line. *Id.* In 2025 to date, Echo MAV has sold over 500 EchoPilot AI boards and 500 EchoPilot Carrier boards. *Id.* At current prices, and based on the same valuation multiplier Echo MAV applied at closing, the value of the PixC4 Line is approximately $3 million today. *Id.* Echo MAV is finalizing two new multi-million dollar sales contracts for the PixC4 Line which will lead to more sales and an even greater valuation for the technology. *Id.*

To date, Echo MAV has been unable to monetize its rights under the UT Battelle Contracts, because Horizon31 never delivered to Echo MAV the files for the 250 unique software and hardware designs it represented were available under the UT Battelle Contracts. Sprinkle Decl., ¶ 26. However, Echo MAV believes the value of the UT Battelle Contracts remains at least $1.5 million today, assuming that the 250 design files are available and can be accessed. *Id.*

Echo MAV has other assets and technology which are completely independent of the assets it purchased from Horizon31. For example, following the sale, Echo MAV independently

developed and launched a new generation of drone products, including the Monark Drone platform, using proprietary systems and personnel who were not employed by Horizon31. Sprinkle Decl., ¶ 27. These developments were funded solely by Echo MAV, without contribution or involvement from Stinson or Horizon31. *Id*.

After the closing of the APA, Echo MAV hired Stinson to serve as its Chief Technology Officer ("CTO"). Sprinkle Decl., ¶ 20. He worked out of Echo MAV's Knoxville office. *Id*. Stinson brought with him Horizon31's existing GitHub and CircuitHub accounts, which were in his individual name and for which he controlled the login and password information. *Id*. Echo MAV stores software code which is proprietary and critical to the development of its products on GitHub. *Id.*, ¶ 21. CircuitHub is a company which quickly manufactures custom-designed circuit boards. *Id.*, ¶ 22. Echo MAV uses CircuitHub to generate circuit boards for prototyping and testing new applications. *Id*. After the closing, Stinson never switched Horizon31's GitHub and CircuitHub accounts into Echo MAV's name. *Id.*, ¶ 23. He kept the accounts in his individual name and maintained control over the logins and passwords for the accounts. *Id*.

As CTO, Stinson also had access to all of Echo MAV's other critical accounts and systems. Sprinkle Decl., ¶ 24. He had access to a company American Express card with no spending limit. *Id*. He also had access to Echo MAV's Quickbooks and WooCommerce[1] accounts. *Id*. Among other things, his Quickbooks access would have allowed him to view all of Echo MAV's accounts payable and determine how many creditors Echo MAV had. *Id*.

In September 2024, Stinson set up a Tennessee limited liability company called BS Solutions and used it to lease a 27-year-old Toyota Land Cruiser with 190,000 miles to Echo MAV. Sprinkle Decl., ¶¶ 32-33, 50. The Land Cruiser was worth approximately $8,800 at the time of the

---

[1] The e-commerce platform Echo MAV uses.

lease, however, the lease calls for 12 monthly payments of $750.00, or $9,000. *Id.*, ¶¶ 33-34. Ostensibly, the purpose of the lease was to allow EchoMav employees to drive the Land Cruiser. *Id.*, ¶ 35. In reality, Echo MAV rarely used the vehicle because Stinson's children had it most of the lease term. *Id.* Nor was the vehicle even registered to BS Solutions – instead, it was registered to Stinson individually. *Id.*, ¶ 36. Stinson notified Echo MAV he was terminating the lease on May 31, 2025. *Id.*

On April 18, 2025, Echo MAV and Stinson entered into a Confidential Information Non-Disclosure and Turnover Agreement with Employee/Agent ("NDA"). Sprinkle Decl., ¶ 37. Stinson agreed not to remove, disclose or misappropriate any of Echo MAV's confidential information or trade secrets without its consent, or solicit any of EchoMAV's suppliers or purchasers for two years after his employment ended. *Id.*, ¶ 38.

Echo MAV did not make the entire February 2024 or February 2025 Note payments timely, because Knowles failed to source capital to make the payments. Sprinkle Decl., ¶ 28. However, it did pay $180,000 toward the Note in November 2024 as cash was available. *Id.* On March 21, 2025, Horizon31 sued Echo MAV and Knowles in the Circuit Court for Knox County, Tennessee, Case No. 3-62-25 (the "Knox County Lawsuit"), to collect on the Note. *Id.*, ¶ 29. To resolve the Knox County Lawsuit, Echo MAV and Knowles gave Horizon31 an Agreed Judgment in the amount of $1,452,385.22, plus $4,600 in attorney's fees, to be held and not filed before May 21, 2025. *Id.*, ¶ 30.

After giving Horizon31 the Agreed Judgment, Echo MAV began working diligently to obtain capital to pay the debt, and negotiating with Stinson for a plan to repay it. Sprinkle Decl., ¶¶ 31, 40. Echo MAV and Stinson were in regular communication until May 20, when Stinson cut off negotiations and resigned as Echo MAV's CTO. *Id.*, ¶ 41. After that, he entered Echo MAV's office premises without notice or permission and proceeded to restrict Echo MAV's access

6

to its core internal systems, including disabling access to Slack communications, GitHub code repositories, and cloud-based vendor accounts used in the development and operation of Echo MAV's product lines.  *Id.*, ¶ 42.  He deleted or disabled administrative user accounts tied to key engineering tools and refused to return credentials necessary for manufacturing relationships with CircuitHub and other suppliers.  *Id.*  He told Echo MAV's employees he was going to resign until Horizon31 was paid and would serve cease and desist orders upon Echo MAV and each employee. *Id.*  Stinson contacted military procurement officials affiliated with Fifth Special Forces Group, CMI2, Darley Defense and Persistent Systems—entities with which Echo MAV had active proposals or relationships. *Id.*, ¶ 43.  Specifically, he called Rob Leach of CMI2 and Chris Knapp of Persistent Systems and gave both the impression that Echo MAV would not exist any longer. *Id.*  He contacted a representative of Darley Defense and tried convince Darley to divert to Horizon31 a payment which was owed to Echo MAV.  *Id.*

Stinson also deleted Echo MAV's internal files and records critical to the Monark Drone development program, which was developed completely independently of Horizon31 and Stinson. Sprinkle Decl., ¶¶ 27, 44.  He disabled certain core cloud repositories, deleted user access credentials, and restricted access to manufacturing files, design data, and vendor platforms.  *Id.* This resulted in the temporary shutdown of Echo MAV's prototyping pipeline and required substantial resources to partially recover.  *Id.* Echo MAV is still investigating the full extent of the data loss.  *Id.*  Stinson directed an Echo MAV employee to prevent Sprinkle and Echo MAV's web developers from accessing Echo MAV's website.  *Id.*, ¶ 45.  He also erased hard drives on four Echo MAV computers, copied eight Echo MAV thumb drives and deleted multiple Echo MAV files. *Id.*

After learning of Stinson's wrongful, vindictive conduct and breaches of his NDA, Echo MAV did not make payment under the Agreed Judgment on May 21, 2025.  Sprinkle Decl., ¶ 46.

That day, Horizon filed the Agreed Judgment. *Id.* Then Stinson again returned to Echo MAV's Knoxville office without authorization and told multiple Echo MAV engineers to stop working because all of Echo MAV's property now belonged to him. *Id.*, ¶ 47. This statement is inaccurate because Echo MAV granted Horizon31 a security interest only in the assets it purchased from Horizon31, and Echo MAV has a large amount of valuable property which it obtained and developed independently of Horizon31. *Id.*, ¶ 47. Stinson's inaccurate statements caused confusion and apprehension among Echo MAV's employees and led directly to the resignation of at least four engineers. *Id.*

On May 23, 2025, an attorney representing Horizon31 sent Echo MAV's attorney a letter notifying Echo MAV that Horizon31 had filed the Agreed Judgment and demanding that Echo MAV surrender to Horizon31 all collateral under the Security Agreement within two business days. Sprinkle Decl., ¶ 48. On May 28, 2025, an attorney representing Horizon31 served post-judgment interrogatories and requests for production of documents on Echo MAV in the Knox County Lawsuit. *Id.*, ¶ 49.

On May 27, 2025, (six days after Stinson came to Echo MAV's Knoxville office and declared that all of Echo MAV's property was now his) Articles of Amendment were filed for his company, BS Solutions LLC, to change its name to "Drones from Scratch LLC." Sprinkle Decl., ¶ 51. Stinson then created a website called https://dronesfromscratch.com which advertises the creation of complex unmanned systems and software solutions which are extremely similar to the products Echo MAV offers. *Id.*, ¶ 53.

On June 12, 2025 (the "Petition Date"), Horizon31 filed the involuntary petition in this case against Echo MAV as the only petitioning creditor. As of June 12, 2025, Echo MAV had 27 unsecured creditors. Sprinkle Decl., ¶ 56. Except for the debts to Horizon31 and BS Solutions n/k/a Drones From Scratch, LLC, Echo MAV is paying its debts as they come due. *Id.*, ¶ 57.

## III.    LEGAL STANDARD

The party challenging venue bears the burden of establishing by a preponderance of the evidence that the case was improperly venued. *In re Bavelis*, 453 B.R. 832, 867 (Bankr. S.D. Ohio 2011).

In an involuntary bankruptcy case, the petitioning creditor(s) have the burden to establish that they are qualified, *i.e.*, that they hold a claim against the alleged debtor that is neither contingent as to liability nor subject to a bona fide dispute as to liability or amount. *Riverview Trenton Rail. Co. v. DSC, Ltd. (In re DSC, Ltd.),* 486 F.3d 940, 944-45 (6th Cir. 2007). Congress made clear that it intended to disqualify a creditor whenever there is any legitimate factual or legal basis for the debtor not paying the debt. *Id.* If there is a single petitioning creditor, it has the burden of establishing that the alleged debtor has fewer than 12 qualifying creditors. *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715 (4th Cir. 1993).

Similarly, the petitioning creditor has the burden of proving that the putative debtor is generally not paying its debts as they come due. *In re R.N. Salem Corp.*, 29 B.R. 424, 428 (S.D. Ohio 1983); *Paroline v. Doling*, 116 B.R. 583, 585 (Bankr. S.D. Ohio 1990).

Finally, courts presume the petitioning creditor(s) filed an involuntary petition in good faith, so the alleged debtor has the burden of proving bad faith. *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 254 (6th Cir. 2006).

## IV.    ARGUMENT

### A.    This case must be dismissed because venue is improper in this Court.

A bankruptcy case may be commenced in the district in which the debtor's "domicile, residence, principal place of business in the United States, or principal assets in the United States" has been located for the 180 days immediately preceding the petition date. 28 U.S.C. § 1408; *Thompson v. Greenwood*, 507 F.3d 416, 419 (6th Cir. 2007). Because the four grounds for venue

are set forth in the alternative, venue is proper if the debtor meets any one of the tests. *In re Acor*, 510 B.R. 588, 591 (Bankr. W.D. Tenn. 2014).

In the case of an LLC, the state where it was organized is generally its domicile or residence. *In re Crosby Nat'l Golf Club, LLC*, 534 B.R. 888, 890 (Bankr. N.D. Tex. 2015). A debtor's principal place of business is the place where the debtor's high level officers direct, control and coordinate the business's activities, *i.e.*, the "nerve center" of the company. *Id*., *citing Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-95 (2010).

Venue is not proper in this district against Echo MAV under any of the four Section 1408 tests. Echo MAV is organized under New Mexico law, which eliminates the domicile and residence tests. Sprinkle Decl., ¶ 3. Echo MAV's principal place of business is in Lubbock, in the Northern District of Texas. Its sole owner, all executives, and a majority of its employees work out of the Lubbock office. *Id*., at ¶ 6. Its payroll is processed from Lubbock and its banking relationship is in Lubbock. *Id*. It has a Lubbock phone number. *Id*. Echo MAV's nerve center clearly is in the Northern District of Texas, not in this district. And Echo MAV's principal assets are located in Lubbock as well, eliminating the fourth and final venue test under Section 1408. *Id*., at ¶ 6. This case was filed in this Court for only one reason – this district is where Horizon31 and its attorneys are located. But mere convenience for the petitioning creditor is not a proper basis for venue under 28 U.S.C. § 1408.

If a bankruptcy case is filed in the wrong venue, the bankruptcy court must either dismiss the case or transfer it to a proper venue. *Thompson*, 507 F.3d at 422. Here, dismissal, not transfer, is the proper remedy. As detailed below, this case is subject to dismissal for at least three additional, independent reasons: Horizon31 fails to meet the numerosity requirement; Echo MAV is paying its debts as they come due; and this is a bad faith, abusive filing by a single petitioning

creditor.  This case would be subject to dismissal for those reasons, even if it had been filed in a proper venue.  The interests of justice compel the prompt dismissal of this case.

      B.    <u>This case must be dismissed because Horizon31 has not satisfied the numerosity requirement of 11 U.S.C. § 303(b).</u>

          i.    *Echo MAV has more than 12 unsecured creditors, so this case requires at least three qualifying petitioning creditors, not one.*

Where an involuntary debtor has 12 or more unsecured creditors, the petition must be filed by at least three entities holding non-contingent, undisputed claims of an aggregate value at least $21,050 greater than the value of any lien on property of the debtor securing such claims.  11 U.S.C. § 303(b)(1).  Once an involuntary debtor identifies at least 12 secured creditors, the petitioning creditor must establish compliance with Section 303(b)'s numerosity requirement.  *In re Reyes-Colon*, 922 F.3d 13, 19 (1st Cir. 2019).  If it is unable to do so, the petition must be dismissed.  *Id*. at 22.  The three-creditor requirement is not a meaningless formality which may be ignored until after the petition is filed.  *Basin Elec. Power Co-op. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985).  If a single creditor files a petition with knowledge that the alleged debtor has more than 12 creditors, the petition will be dismissed as a fraudulent attempt to confer jurisdiction upon the court where none exists.  *Id*.

Echo MAV had 27 creditors as of the Petition Date.  Sprinkle Decl., at ¶ 56.  Thus this case requires three qualifying petitioning creditors.  There is no excuse for Horizon31 not to have known that when it filed the petition.  Until May 20, 2025, just three weeks before the petition was filed, Stinson, one of two members of Horizon31, was Echo MAV's chief technology officer.  *Id*., ¶¶ 20, 41.  He worked out of Echo MAV's Knoxville office, meaning for example he knew the Knoxville landlord is a creditor.  *Id*., ¶ 20.  He maintained sole control of Echo MAV's CircuitHub account, so he knew CircuitHub is a creditor.  *Id*., ¶¶ 20-23.  He had access to an Echo MAV American Express card, meaning he was aware American Express is a creditor.  *Id*., ¶ 24.  Most

importantly, he had access to Echo MAV's Quickbooks account, meaning he was aware of *all* of Echo MAV's creditors. *Id*., at ¶ 24. Horizon31 certainly should have known that Echo MAV had more than 12 unsecured creditors, and that three qualifying petitioning creditors were needed to file this petition.

Yet Horizon31 intentionally filed this case in the wrong district with only itself as a petitioning creditor, because this is in reality a two-party payment dispute between Horizon31 and Echo MAV which has no business being in bankruptcy court. This case must be dismissed for Horizon31's failure to comply with 11 U.S.C. § 303(b).

ii. *Horizon31 is not a qualifying petitioning creditor because it is fully secured by its lien on the assets it sold to Echo MAV.*

Even Horizon31 itself is not a qualifying petitioning creditor, because it is fully secured by its security interest in the assets it sold to Echo MAV for $2 million just two years ago. According to Horizon31, its claim is based on the Agreed Judgment Echo MAV gave it in the amount of $1,456,985.22. Involuntary Petition, Q. 13; Sprinkle Decl., ¶ 30. Horizon31 claims the unsecured portion of this debt is $816,625.00, which implies that its collateral (the assets it sold to Echo MAV for $2 million two years ago) are now worth just $640,360.22. This defies logic, and Horizon31 makes no attempt to explain it.

In the two years after Echo MAV bought Horizon31's assets, it has improved the PixC4 Line such that it is now worth at a minimum $3 million – or six times what Echo MAV paid for it. Sprinkle Decl., ¶ 25. And the UT Battelle Contracts are worth $1.5 million themselves. *Id*., ¶ 26. Horizon31's debt is oversecured with an equity cushion of greater than $3 million. It does not qualify as a petitioning creditor. *In re Crabtree*, 32 B.R. 837, 839 (E.D. Tenn. 1983) (a secured creditor may act as a petitioning creditor only if it waives its security, or the unsecured portion of

the other petitioning creditors' claims exceeds the Section 303(b) threshold). This means the case

in actuality was filed with <u>zero</u> qualifying petitioning creditors, and must be dismissed.

        C.      <u>This case must be dismissed because Echo MAV is generally paying its debts as
they come due.</u>

       When an alleged debtor contests an involuntary petition, the bankruptcy court shall order

relief only if: 1) the debtor is "generally not paying" such debtor's undisputed debts as they become

due, or 2) within 120 days before the petition date, a custodian had been appointed to take charge

of the debtor's property.[2]  To determine if the alleged debtor generally is not paying its debts, the

bankruptcy court examines the totality of the circumstances existing when the petition is filed.  *In

re Concrete Pumping Serv., Inc.*, 943 F.2d 627, 630 (6th Cir. 1991).  The bankruptcy court should

consider both the proportion of creditors being paid and the proportion of debt, in dollar value,

being paid.  *Id*.  To carry its burden, the petitioning creditor must do more than "merely establishing

the existence of a few unpaid debts."  *In re Fallon Luminous Prods. Corp.*, 2010 WL 330222, at

*2 (E.D. Tenn. 2010).  Factors in the analysis include: "(1) the number of unpaid claims; (2) the

amount of such claims; (3) the materiality of the nonpayments; and (4) the debtor's overall conduct

of its financial affairs."  *Id*.

       Where the debtor is paying all but the petitioning creditor, an involuntary petition will be

sustained only if the petitioning creditor can show that the debtor has engaged in a sham, artifice

or fraud; or the creditor has a special need for bankruptcy relief such as where state law remedies

are inadequate.  *Paroline v. Doling*, 116 B.R. 583, 585 (Bankr. S.D. Ohio 1990); *see also Concrete

Pumping Serv.,* 943 F.2d at 630.

---

[2] This does not apply, and Horizon31's involuntary petition alleges only that Echo MAV is
generally not paying its debts as they come due.

Echo MAV has identified 27 unsecured creditors to which it owes, in total, $5,789,722.45. It is paying 25 of the 27 debts, totaling $4,323,737.23, as they come due.  Sprinkle Decl., ¶ 56, Exh. 6.  There are but two claims which are not being paid regularly – the Horizon31 debt and the $9,000 claim by Stinson's wholly-owned company Drones From Scratch LLC (f/k/a BS Solutions) for a lease of a 27-year-old car registered to Stinson.  Together, these two claims constitute a mere 25.3% of the total debt.  Horizon31 has no evidence that Echo MAV is mismanaging its business affairs.  To the contrary, Echo MAV's business is thriving.  Among other things, it recently secured two multi-million dollar contracts, and it has increased the value of the Horizon31 assets by improving its products and steadily growing sales.  *Id.*, ¶ 25.  This is not a case in which unsecured creditors need the protections of the Bankruptcy Code because they are in danger of not being paid.  It is merely a single-creditor dispute which does not belong in bankruptcy.

D.     This case must be dismissed because Horizon31 filed the petition in bad faith.

Every bankruptcy petition, voluntary and involuntary, must be filed in good faith.  *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3d Cir. 2015).  The filing of an involuntary petition is an extreme remedy which carries serious consequences for the alleged debtor.  *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985).  For that reason, "courts should be wary of creditors who may find alluring the 'retributive quality' of thrusting a debtor into bankruptcy." *Forever Green*, 804 F.3d at 335.  To be filed in good faith, a petition must seek to create or preserve some value that would otherwise be lost – not merely distributed to a different stakeholder.  *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129 (3d Cir. 2004).

Whether an involuntary bankruptcy petition was filed in bad faith requires the bankruptcy court to evaluate the totality of the circumstances.  *John Richards Homes*, 439 F.3d at 254. It is a fact-intensive determination which requires consideration of, among other things, whether:

the creditors satisfied the statutory criteria for filing the petition;

14

the involuntary petition was meritorious;

the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;

there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;

the filing was motivated by ill will or a desire to harass;

the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;

the filing was used as a tactical advantage in pending actions;

the filing was used as a substitute for customary debt-collection procedures; and

the filing had suspicious timing.

*Forever Green*, 804 F.3d at 336.

At least seven of the nine indicia of bad faith identified in *Forever Green* are present in this case:

> i.    *Satisfaction of the statutory filing criteria.*

As described in greater detail within this Memorandum, Horizon31 met none of the criteria for filing this involuntary petition.  The case is filed in the wrong venue, over one thousand miles from Echo MAV's principal place of business in Lubbock.  And there are zero qualifying petitioning creditors in the case.

> ii.   *Meritoriousness of the petition.*

Echo MAV generally is paying its debts as they come due.  The only debts it is not paying are to Horizon31 and Stinson's wholly-owned company BS Solutions a/k/a Drones From Scratch, LLC.  And it is not refusing to pay amounts justly due and owing to those creditors.  On the contrary, it was actively engaged in payment negotiations with Stinson until May 20 when he unilaterally terminated negotiations, resigned, and embarked on his "scorched earth" strategy.

15

Echo MAV's business is thriving and is not in financial distress. It has no need for reorganization, much less liquidation.

### iii.   *Reasonable pre-filing inquiry.*

Until May 20, 2025 when he resigned as CTO, Stinson had full access to Echo MAV's QuickBooks account. Even a cursory examination of Echo MAV's accounts payable would have revealed that it has more than 12 unsecured creditors. Yet Horizon31 filed this case with just a single petitioning creditor. It appears that Horizon31 performed little, if any, due diligence before filing this case.

### iv.   *Evidence of preferential payments or dissipation of assets.*

Echo MAV has not been making preferential payments to creditors because, among other things, it is not insolvent. *See* 11 U.S.C. § 547(b)(3). Instead, it is paying its debts in the ordinary course. Nor has it dissipated any assets outside the ordinary course of business.

### v.   *Filing motivated by ill will or harassment.*

In deciding whether a petition is motivated by ill will or malice, courts consider the petitioning creditor's actions before and after filing. *In re Anmuth Holdings LLC*, 600 B.R. 168, 195 (Bankr. E.D.N.Y. 2019). Horizon31 and Stinson's pre-petition conduct demonstrate clearly their ill will toward, and intent to harass, Echo MAV. Stinson resigned from Echo MAV on May 20 and unilaterally cut off payment negotiations with Echo MAV, which was working to get the Agreed Judgment paid in a reasonable, timely manner. While he was within his rights to do those things, Stinson did not stop there. Rather, he embarked on a "scorched earth" strategy to try to burn Echo MAV down on his way out. He deleted or disabled access to multiple critical Echo MAV systems, accounts and files, including files related to the Monark Drone line of products which was developed completely independently of Horizon31 and could not, under any plausible interpretation of the APA and Security Agreement, be considered Horizon31's collateral. He

16

contacted Echo MAV customers to make false representations about Echo MAV's financial stability and demanded one customer pay to him money that was owed to Echo MAV. Within a week of his resignation, he took steps to start a competing business by renaming his "BS Solutions" company to "Drones From Scratch LLC" and building out a corresponding website advertising products competitive with Echo MAV's drones and technology. He did all of this despite having promised just a month prior not to misuse Echo MAV's confidential information or solicit its customers.

Stinson also threatened Echo MAV employees with cease and desist orders and told them to stop working because he owned all of Echo MAV's property (not true), leading at least four employees to resign. He caused Horizon31 to file the Agreed Judgment and serve post-judgment discovery requests. Then, days later and before Echo MAV was required to respond, Horizon31 and Stinson's pattern of harassment culminated in the filing of this involuntary bankruptcy petition. These are not the actions of a reasonable secured creditor who simply wants to get paid back. These are the vindictive actions of a party harboring animosity, ill will and malice.

> vi.    *Use of the filing to obtain a disproportionate advantage rather than protect creditors.*

The filing of this bankruptcy petition benefits no creditor except possibly Horizon31, the debtor's only secured creditor.[3]  Outside of bankruptcy, Echo MAV's unsecured creditors are being paid regularly because its business is succeeding. Within a Chapter 7 liquidation, of course, Echo MAV's assets will be sold at forced liquidation value, which invariably produces less value that a free-market, non-coerced sale. In such a scenario Horizon31 is assured of full payment, but the other creditors are not. This filing does not protect any of Echo MAV's other creditors.

---

[3] In at least one sense it harms even Horizon31's interests, because the filing makes it more difficult for Echo MAV to obtain capital to repay Horizon31.

vii.      *Use of the filing as a substitute for customary debt-collection procedures.*

Creditors may not use the bankruptcy court as a mere debt-collection device. *In re Valuex Research, LLC*, 2023 WL 5941925, at *9 (Bankr. D. Conn. 2023). The bankruptcy court does not exist to serve as a "rented battlefield" or "collection agency," and the use of an involuntary filing as a tactic to force a workout upon an alleged obligor is an abuse of the bankruptcy process which serves as cause for dismissal under 11 U.S.C. § 707(a). *Id.*

The timing of this filing by Horizon31 strongly indicates that it is a mere attempt to use this Court to collect its debt from Echo MAV. The second and final payment under the Note payable to Horizon31 was due on February 17, 2025. Horizon31 sued Echo MAV and Knowles on the Note on March 21. The parties quickly reached a settlement involving an agreed pocket judgment which was not to be filed before May 21, 2025. No issue to this point. However, everything changed on May 20 when Stinson resigned as Echo MAV's CTO and launched his "scorched earth" strategy to damage Echo MAV as much as he possibly could on the way out.

Horizon31 filed the Agreed Judgment on May 23, 2025. Per Tenn. R. Civ. P. 62.01, enforcement of the judgment was stayed for a period of 30 days, or until June 22, 2025. Horizon served post-judgment discovery requests on May 28, 2025. Per Tenn. Rs. Civ. P. 6.01, 33.01 and 34.02, Echo MAV's discovery responses were due on June 30, 2025. However, just 20 days after filing the Agreed Judgment, and 15 days after serving the post-judgment discovery, Horizon31 then filed the involuntary petition. By doing so it triggered the automatic stay which, of course, halts the state court proceeding against Echo MAV and the steps Horizon31 was taking to enforce the Agreed Judgment. 11 U.S.C. § 362(a). Bankruptcy courts across the country agree: where a single petitioning creditor such as Horizon31 has not exhausted, or in this case even initiated, its state court collection remedies, the involuntary petition should be dismissed. *In re Smith*, 243 B.R.

169, 198 (Bankr. N.D. Ga. 1999); *see also In re Nordbrock*, 772 F.2d 397, 400 (8th Cir. 1985); *In re Bos*, 561 B.R. 868, 900-02 (Bankr. N.D. Fla. 2016).

The fact that Horizon31 filed this petition before seriously attempting to enforce its judgment shows that Horizon31 was never serious about pursuing its state-court remedies, and this is nothing but an abusive filing. When Echo MAV didn't cut a $1.5 million check the very instant the Agreed Judgment was entered by the state court, Horizon31 (and Stinson) got impatient and decided to try to ramp up the pressure with an involuntary Chapter 7 bankruptcy filing against an operating business that is paying its debts in due course. This is simply an abusive, bad faith filing.

E.      Horizon31 must be sanctioned under 11 U.S.C. § 303(i).

If the Court dismisses an involuntary petition other than on consent, it may grant judgment against the petitioners and in favor of the debtor for costs and a reasonable attorney's fee. 11 U.S.C. § 303(i)(1). If the Court further finds the petition was filed in bad faith, it may grant judgment against the petitioner for any damages proximately caused by the filing or punitive damages. 11 U.S.C. § 303(i)(2). The non-consensual dismissal of an involuntary petition raises a rebuttable presumption that, at a minimum, an award under Section 303(i)(1) is authorized. *In re DSC, Ltd.*, 387 B.R. 174, 178 (Bankr. E.D. Mich. 2008). In determining whether to award costs and fees under Section 303(i), courts examine the totality of the circumstances including: the reasonableness of the petitioners' actions, the petitioners' motives and objectives; and the merits of the petitioners' view that filing was appropriate. *In re Cadillac by DeLorean & DeLorean Cadillac, Inc.*, 265 B.R. 574, 580-81 (Bankr. N.D. Ohio 2001). The Court has broad discretion to choose one or more of the available sanctions in such a manner as the facts warrant. *Id*.

Echo MAV will not belabor the points it has already made regarding the unreasonableness of Horizon31's actions, its motivations and objectives, or its improper conduct. As to the appropriateness of the filing, two points bear repeating. First, there is no valid basis under 28

U.S.C. § 1408 for finding that venue is proper in this Court. Even if Horizon31 could overcome all other objections to the filing (it cannot), Echo MAV, a New Mexico LLC which is headquartered in Texas, cannot be a debtor in bankruptcy in <u>this district</u>. Horizon31 filed here only because Stinson and its counsel are located here. Venue in a bankruptcy case is not a matter of convenience. *In re Ross*, 312 B.R. 879, 885 (Bankr. W.D. Tenn. 2004). And even if it was, this is an inconvenient forum for this Texas-based involuntary debtor.

It is also notable that this is a one-petitioning-creditor case where the petitioner knew, or should have known, that the alleged debtor had a minimum of 27 unsecured creditors. Remarkably, Stinson did not even have his wholly-owned company, BS Solutions, which is an unsecured creditor of Echo MAV, join the filing as a second petitioner. That speaks volumes as to Horizon31 and Stinson's motivations here.

The Bankruptcy Code was created by Congress as a shield for debtors, not a sword for creditors. *Anmuth Holdings*, 600 B.R. at 194, *quoting In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995). Horizon31 has attempted to flip that principle on its head by pushing Echo MAV into bankruptcy as but another tactic in its pressure campaign to extract payment of its debt. If ever there was a case justifying an award of costs, attorney's fees, and compensatory and punitive damages for a bad-faith involuntary filing, it is this one.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, this Court should decline to enter an order for relief, dismiss the involuntary petition filed by Horizon31, and after a hearing, grant Echo MAV its reasonable costs, attorney's fees, and compensatory and punitive damages resulting from this bad-faith filing.

**RESPECTFULLY SUBMITTED:**


**DICKINSON WRIGHT, PLLC**

By:    */s/ Stephen M. Montgomery*
       Stephen M. Montgomery
       TN Bar No. 026489
       424 Church Street, Suite 800
       Nashville, TN 32719
       Telephone: 615-620-1712
       smontgomery@dickinson-wright.com

       Attorney for Alleged Debtor Echo MAV, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a true and correct copy of the foregoing upon the following, and all persons registered to receive electronic notice in this case, via the Court's CM/ECF system on the 3rd day of July, 2025:

Maurice K. Guinn                                Office of the United States Trustee
Gentry Tipton McLemore                  800 Market Street, Suite 114
Riverview Tower, Suite 2300            Knoxville, TN 37902
900 South Gay Street
Knoxville, TN 37902


                                                    /s/ Stephen M. Montgomery