**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE**

| | | |
|---|---|---|
| **In re** | : | |
| | : | |
| **Echo MAV, LLC aka EchoMAV, LLC** | : | **Case No.  3:25-bk-31122-SHB** |
| | : | |
| **Alleged Debtor** | : | **Chapter 7 (Involuntary)** |

---

**DECLARATION OF BRAD STINSON IN SUPPORT OF
REPLY TO MOTION TO DISMISS INVOLUNTARY PETITION**

---

COMES NOW Brad Stinson to declare under penalty of perjury:

1.      My name is Brad Stinson. I am more than 18 years of age and competent to testify and have personal knowledge of the statements in this Declaration.

2.      In April 2023, in consideration of a letter of intent issued by Echo MAV, LLC to Horizon31 to buy its assets, I began working as the Chief Technical Officer for Echo MAV, LLC.

3.      I am one of two members of Horizon31, LLC. ("Horizon").

4.      Horizon's business was hardware and software related to unmanned systems (drones).

5.      On March 10, 2023, Horizon sold its assets to Echo MAV, LLC (sometimes referred to as "Echo MAV") in consideration of a $500,000.00 payment at closing and a Promissory Note in the amount of $1,500,000.00, providing for two $750,000.00 payments. The first payment was due on February 17, 2024, and the second payment was due on February 17, 2025.

6.      Echo MAV did not make the $750,000.00 payment due on February 17, 2024. Echo MAV did pay $80,000.00 on November 13, 2024, and $100,000.00 on November 15, 2024.

1

7.    Echo MAV did not make the second $750,000.00 payment due on February 17, 2025.

8.    Echo MAV, LLC was formed by William Jeffrey Knowles on August 3, 2022 as shown in Exhibit 1.

9.    Shortly after formation, Denny Eugene Trey Sprinkle III and Michael Hodges were hired by Mr. Knowles as managing directors.

10.    On July 1, 2024, Denny Eugene Trey Sprinkle III formed EchoMAV Technologies, Inc., a Texas corporation, whose EIN is 99-4322807 as shown in Exhibit 2. After this point, Mr. Sprinkle began to refer to himself as "founder" and "CEO" of Echo MAV.

11.    Mr. Sprinkle and Mr. Hodges continually confirmed in staff meetings that Mr. Knowles had invested approximately $10 million dollars in Echo MAV, LLC during the period between August 3, 2022 and January 2025.

12.    Beginning in October 2024, Echo MAV, LLC's customers were instructed to issue purchase orders to EchoMAV Technologies, Inc. instead of Echo MAV, LLC. Customers were misled that Echo MAV, LLC had been restructured into a C-corporation. However, EchoMAV Technologies, Inc. was an entirely different entity with no relation to Echo MAV, LLC other than Mr. Sprinkle. See Exhibit 3 and Exhibit 4.

13.    I know customers who were previous customers of, or originally issued quotes from Echo MAV, LLC, were instructed between September 2024 and May 2025 to make payments payable to the order of EchoMAV Technologies, Inc.

14.    In April 2025, I became aware that EchoMAV Technologies, Inc. was operating without the knowledge and approval of William Jeffrey Knowles, had not acquired Echo MAV's assets, and was selling assets, including Horizon's collateral, which had not been legally transferred to it.

15.    In the period between October 2024 and April 2025, Mr. Sprinkle and Mr. Hodges, without the consent of Mr. Knowles, engaged in unauthorized use and control of Echo MAV, LLC's company assets to include equipment, cash, contracts, proprietary designs, and customer relationships for their own benefit.

16.    In the period between October 2024 and June 2025, EchoMAV Technologies, Inc. used the same branding, name, logos, website and product names to confuse customers that the two entities, Echo MAV, LLC and EchoMAV Technologies, Inc. were the same entity as shown in Exhibit 5 and Exhibit 6.

17.    In the period between October and April 2025, EchoMAV Technologies, Inc. engaged in tortious interference by poaching clients from Echo MAV, LLC, including the United States Government, suppliers, and contracts in a deceitful way.

18.    On April 21, 2025, as shown in Exhibit 1, Mr. Sprinkle came to own Echo MAV, LLC. Although a copy of the purchase agreement between Mr. Knowles and Mr. Sprinkle was requested by Horizon, Mr. Sprinkle never provided it.

19.    To my knowledge, Echo MAVs assets, including Horizon's collateral, were never acquired by EchoMAV Technologies, Inc.

20.    From January 2025 to my departure on May 20, 2025, numerous unpaid vendors contacted the Echo MAV, LLC Knoxville office about unpaid claims. I fielded some of the calls and/or other forms of contact, so I knew Echo MAV was not paying its debts to these vendors as they became due.

21.    Based on my contacts with entities/persons identified as creditors of Echo MAV in Exhibit 6 to the Sprinkle Declaration, the following are not creditors of Echo MAV, LLC:

George McMahan
Kutta Technologies
IQinetics Vertiq

3

Also, BS Solutions, now known as Drones From Scratch, LLC, is my business and was not a creditor of Echo MAV, LLC on the Petition Date.

22.     In October 2024, Mr. Sprinkle started issuing purchase orders to vendors for components which Echo MAV had used to build products. EchoMAV Technologies, Inc. began building the products and billing the former Echo MAV customers. I did not discover this fact until February or March 2025.

23.     Based on this timing, I believe the following listed on Exhibit 6 of the Sprinkle Declaration are creditors of EchoMAV Technologies, Inc., not Echo MAV, LLC.

> Arrow Electronics
> Booz Allen Hamilton
> Circuit Hub
> Clear Path Marketing
> Hybrid Project
> Irradiate LLC
> Microhard Systems
> NW Blue LLC
> Passage Consulting Group
> Republic Capital Access
> Seek Thermal
> Vol Case & Containers

24.     In March 2025, Mr. Sprinkle told me that Echo MAV had failed to maintain books and records about its financial affairs and therefore was having a challenging time getting a loan or investment.

25.     In March 2025, Mr. Sprinkle also told me that Echo MAV had not filed a federal tax return for the past three years and was therefore having a challenging time getting a loan or investment.

26.     On March 21, 2025, Horizon sued Echo MAV on the Promissory Note.

27.     On May 21, 2025, Judgment was entered in favor of Horizon and against Echo MAV by the Circuit Court for Knox County in the amount of $1,452,385.22 plus $4,600.00 for attorney fees and litigation expenses.  See Exhibit 7.

28.     On May 20, 2025, I resigned from my position with Echo MAV, LLC. My resignation was primarily due to the observed unethical and suspected illegal activities I had witnessed in relation to Mr. Sprinkle's and Mr. Hodge's tortious actions against Echo MAV and their customers. I was particularly concerned that Mr. Sprinkle and Mr. Hodges, through EchoMAV Technologies Inc., had defrauded the US Department of Defense. I did not want to be complicit in such activities. In addition, after seeing firsthand the willful denial of payment to other creditors, I became convinced that Echo MAV had no real intention to pay the debt owed to Horizon.

29.     I worked in the Echo MAV Knoxville office from September 2023 to May 2025. From April 2023 to September 2023, I worked for Echo MAV from my home.

30.     Knoxville was the principal place of Echo MAV's business and the location of its principal assets during the 180-day period preceding the Petition Date.

31.     Essentially all of Echo MAV's assets, consisting of inventory, tools, machines, and stock are in the Knoxville location.

32.     Engineering and manufacturing occurred in Knoxville; inventory was stored in Knoxville; shipping of products originated in Knoxville.

33.     The Knoxville office consists of 3,000 square feet with eight offices, a laboratory, a kitchen, a 1,000 square feet warehouse, and a 1,000 square foot storage mezzanine.

34.     As of May 2025, eight people including myself, a software lead, software engineers, mechanical engineers, a technician, and other support staff were all in the Knoxville office. Company meetings were regularly held in the Knoxville office.

35.     Echo MAV's Lubbock office is located in a strip center. The Lubbock office has approximately 1,500 square feet and shares space with another entity owned by Mr. Sprinkle.

36.     As of May 2025, only three of Echo MAV's 16 full-time employees worked in the Lubbock office. No engineering, manufacturing or production occurred in Lubbock. There were no significant assets of Echo MAV in the Lubbock office as of May 2025.

37.     Contrary to Mr. Sprinkle's statement in paragraph 6 of his Declaration, there are not ten Echo MAV employees in the Lubbock office.

38.     The principal assets of Echo MAV were not located in Lubbock as of the Petition Date and never have been.

39.     The Echo MAV employees and their home locations during most of the 180 days preceding the Petition Date were:

Executive Team:
Trey Sprinkle, CEO – Lubbock, TX
Mike Hodges, President – Ft. Worth, TX
Marshall Suetterlin, Operations Manager – Colorado Springs, CO
Brad Stinson, CTO – Knoxville, TN
Kenneth Porter, CFO – Virginia Beach, VA
Jonathan Turnbow, CMO – American Fork, UT

Additional Staff:
Diane Havir – Lubbock, TX
Matthew Cox – unknown
Lexo Burduli – Pennsylvania
Nate Garrison – Clarksville, TN
Todd Madison –remote
Chip Coffin - Colorado
Clayton Baldwin – Knoxville, TN
Benjamin Castor – Knoxville, TN
Charles Wong – Knoxville, TN
Craig Scott – Knoxville, TN
Dustin Fuqua – Knoxville, TN
Thomas Lyons – Knoxville, TN
Garrett Mesmer – Knoxville, TN

40.    The assets Echo MAV purchased from Horizon and in which Echo MAV gave Horizon a security interest are assets of a nature which decline in value over time. Specifically, these assets are circuit board designs and software, both of which have historically depreciated following a non-linear rate according to Moore's law[1].

41.    Horizon has an unsecured claim against Echo MAV, LLC, that is greater than $18,600.00.

42.    In May 2025, large payments were being received by EchoMAV Technologies, Inc., but no payment was made to Horizon and no reasonable offer to resolve Horizon's claim was made by Echo MAV.

43.    Throughout the spring of 2025, the assets and technology belonging to Echo MAV, LLC were being used by EchoMAV Technologies, Inc. to manufacture product.

44.    In his Declaration, Mr. Sprinkle makes false claims that I acted in ways to damage Echo MAV's business after my resignation. These false claims include blocking access to data and a website, deleting "four" computers and "eight" hard drives. I deny these claims and maintain that Echo MAV had continuous access to all relevant data, websites and services. I declare that access or administrative rights to any website, service, data repository or account which I personally maintained was transferred to Echo MAV staff in a timely manner after my resignation or within three days of a request from Echo MAV. Any minor disruptions in business operations which occurred after my resignation could not have been avoided given my position within the company, and it is unreasonable to interpret any such disruptions as nefarious in nature.

45.    In his Declaration, Mr. Sprinkle makes the claim that Horizon31 never delivered 250 unique software and hardware designs owned and exclusively licensed from UT-Battelle.

---

[1] https://ieeexplore.ieee.org/abstract/document/5696765

7

These files were never Horizon's to deliver; per the APA, UT-Battelle owns these designs. Echo MAV always had access to these files per direct request from UT-Battelle.

46.     In his Declaration, Mr. Sprinkle claims that Echo MAV developed and launched the MONARK drone platform "without contribution or involvement from Stinson or Horizon31." This is false, as the MONARK drone leverages Horizon's PixC4-Lite hardware included in the asset list of the APA. Mr. Stinson, as CTO, was in fact the lead of the MONARK project and designed all the hardware and most of the software which was not leveraged from the Horizon assets.

47.     In his Declaration, Mr. Sprinkle claims that I "convinced" Mike Hodges to cause Echo MAV to lease a vehicle from me. This is false, as shown in Exhibit 8, Mr. Hodges approached me with the vehicle listing and convinced me to buy it personally and lease it back to Echo MAV to lower the insurance costs associated with Echo MAV owning the vehicle directly. Echo MAV defaulted on the payment terms of this lease agreement. In addition, Mr. Sprinkle makes the claim that the value of this vehicle was $8,872, however he had direct knowledge that the vehicle was customized, restored, and had a market value of $40,000 or more in 2025. The bill of sale for this vehicle is provided in Exhibit 9 providing unequivocal proof of its value.

48.     In his Declaration, Mr. Sprinkle makes the claim that I interfered with Echo MAV's business by improperly contacting "military procurement officials" with Fifth Special Forces Group, as well as CMI2, Darley Defense and Persistent Systems. I deny these claims. I never spoke with Fifth Special Forces procurement officials or Darley Defense after my resignation from Echo MAV. I have engaged with Persistent Systems only about unrelated projects with my new business, not about Echo MAV other than "I no longer work there." I did talk to Mr. Leach at CMI2, to inform him that I no longer worked at Echo MAV, and that the proposal we were working on the week of my resignation would need to be handed off to another staff member.

8

49.    In his Declaration, Mr. Sprinkle claims I deleted internal files and records critical to the MONARK drone development program. I deny this claim. I deleted no files related to the MONARK drone program. All MONARK files were stored on a shared cloud folder or within a "Github" repository to which Echo MAV had continual access.

50.    In his Declaration, Mr. Sprinkle claims I told employees at the Knoxville office to "stop working." I deny this claim. I informed staff at the Knoxville location that I had resigned, and that Horizon was going to move forward with the lawsuit due to the failure of Mr. Sprinkle to mediate a solution to the debt owed. At that time, May 20, 2025, I considered all information related to the lawsuit a matter of public record.

51.    I am aware that at least four additional staff members resigned from Echo MAV shortly after my resignation. These staff members had similar concerns as me regarding the unethical and suspected illegal actions made by the leadership team of Mr. Sprinkle and Mr. Hodges in the preceding months, as well as the gross negligence demonstrated by the failure to keep the books or file tax returns.

52.    In his Declaration, Mr. Sprinkle claims I entered Echo MAV's office and "declared all of Echo MAV's property was now his." I deny this claim; I made no such statement.

53.    In his Declaration, Mr. Sprinkle claims that my current business is competing and in violation of a non-compete agreement. My current business is an engineering consulting firm, where the customer owns intellectual property. Unlike Echo MAV, it does not sell a tangible product, nor does it create intellectual property to increase its own value. Additionally, the non-compete agreement specifically states that I am prohibited only from soliciting or accepting contracts from customers which were made known by me by Echo MAV for a period of two years. I have followed this requirement and am not in violation of this agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Brad Stinson

## CERTIFICATE OF SERVICE

I certify that the foregoing **"Declaration of Brad Stinson In Support Of Reply to Motion To Dismiss Involuntary Petition"** was filed electronically on July 30, 2025 and will be served by the Court's CM/ECF System on July 30, 2025 on Stephen Mongomery and the United States Trustee.

/s/ *Maurice K. Guinn*
Maurice K. Guinn

*Declaration of Brad Stinson (7-28-25)*

Exhibit Ex. 1 – Echo MAV, LLC Business Formation





Exhibit Ex. 2 – Echo MAV Technologies, Inc. Business Formation

Print

## ECHOMAV TECHNOLOGIES, INC.

| | |
|---|---|
| **Texas Taxpayer Number:** | 32095771690 |
| **Mailing Address:** | 6310 GENOA AVE STE B<br>LUBBOCK, TX 79424 - 2708 |
| **Right to Transact Business in Texas:** ⊕ | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 07/01/2024 |
| **Texas SOS File Number:** | 0805609466 |
| **Registered Agent Name:** | TREY SPRINKLE |
| **Registered Office Street Address:** | 1056 KITTY LANE<br>NEW HOME, TX 79381 |



EXHIBIT

2

Exhibit Ex 3 – Echo MAV, LLC Quote issued to Darley Defense in August 2024

## IIIECHOMAV.

**QUOTE**

**Echo MAV, LLC**

QUOTE NO. **2024-08-05**
DATE:05 Aug 2024

6310 Genoa Ave, Suite A
Lubbock, TX 79424 USA
Phone: 806-809-5023
sales@echomav.com

VALID FOR: **60 DAYS**

TO    Matthew LeMay
      matthew.b.lemay2.mil@army.mil
      2LBCT(P), 25th Infantry Division

Notes: Est 6-8 weeks depending on
configuration.

| PROVIDED BY | PAYMENT TERMS | SHIPPING |
|---|---|---|
| Todd Madison | Negotiable | TBD |

| ITEM | DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| MK1 AIRCRAFT W/SENOR | Mk1 Airframe, HD EO/IR camera w/ 80x zoom, EchoPilot-ORIN AI flight controller, and aircraft battery charger. Includes spare parts, tool kit, operator/maintenance manuals, flight testing and packaging. | 3 | $217,631 | $652,893 |
| TACTICAL GCS | 10" ruggedized, IP67-rated tablet, cables, and antennas | 2 | $15,000 | $30,000 |
| LAPTOP / CONTROLLER | Highspeed Toughbook Laptop with gamepad controller | 1 | $5,250 | $5,250 |
| Antenna | Sector Antenna and Tripod, and pelican case | 2 | $17,352 | $34,704 |
| **Optional** 5G/LTE connection | Places a 5g/LTE connection on Aircraft to allow direct streaming of Sensor video to any web connected device. Requires LTE service plan and coverage over Aircraft flight plan. | 1 | $5,000 | $5,000 |



EXHIBIT
3

Exhibit Ex. 4 – Darley Defense Purchase Order issued to EchoMAV Technologies, Inc. before
EchoMAV Technologies, Inc. could have owned the assets sold.



**W.S. DARLEY & CO.**
**CORPORATE HEADQUARTERS**
325 SPRING LAKE DR ● ITASCA, IL 60143-2072
Toll Free: 800-323-0244 ● Phone: 630-735-3500 ● FAX: 630-735-3560
FEIN 36-0976610    DUNS 005094842    CAGE 15852

**Purchase Order**

| | |
|---|---|
| PO No: | 189145 |
| Supplier No: | 41002782 |
| Contract No: | SPE8EJ21D0025 |

**To:**
ECHOMAV TECHNOLOGIES INC
6310 GENOA AVE STE B
LUBBOCK TX 79424-2708
United States

**Ship To:**
W91V91
0025 IN HHC 02 HEADQUARTERS IN
BLDG 1700 LYMAN ROAD
2ND BCT 25TH ID
SCHOFIELD BARRACKS HI 96857-6048
United States

Delivery Order #:  SPE8EL25FJ00D

Phone:  806 705-8382
Email:   dhavir@echomav.com

| PO Date | FOB Terms | Buyer | Terms | Shipment Method |
|---|---|---|---|---|
| 10/29/2024 | FREIGHT PREPAY ADD TO INVOICE | ANTHONY LORIG | NET 30 | UPS OR BEST WAY / |

| Part Number / Description | Requisition No | Required Delivery | Qty/UOM | Unit Cost | Extended Cost |
|---|---|---|---|---|---|
| MK1-ACPSYNO-TPS SYSTEM, MK1 AIRCRAFT | W91V9142701FYG | 1/31/2025 | 6 EA | $290,237.00 | $1,741,422.00 |
| MK1TRNG-R TRAINING, MK1 | W91V9142701FYG | 1/31/2025 | 2 EA | $48,962.60 | $97,925.20 |

ORDER INSTRUCTIONS:
REFERENCE QUOTE IN RESPONSE TO RFQ: 20240826879447. REQUISITION NUMBER W91V9142701FYG MUST BE INCLUDED ON ALL SHIPPING
LABELS AND PACKING SLIPS. INVOICES AND TRACKING NUMBERS MUST BE EMAILED TO DEFENSESHIPPING@DARLEY.COM.  THIS IS A DPAS
DO-C9 RATED ORDER CERTIFIED FOR NATIONAL DEFENSE USE. THE SUPPLIER IS REQUIRED TO FOLLOW ALL PROVISIONS OF THE DEFENSE
PRIORITIES AND ALLOCATIONS SYSTEM REGULATION (15 CFR 700).

DELIVERY CONTACT NAME AND PHONE NUMBER: MATTHEW LEMAY 520-678-5488

Total: $1,839,347.20

Please reference our purchase order on all correspondence. Notification of changes regarding quantities to be shipped and changes in the delivery schedule are required. Email:
defensepurchasing@darley.com. Order Confirmation required. Please advise shipping date and confirmation date.

This Purchase Order is issued in fulfillment of Federal Contract Number (the Prime Contract/Contract Number above).  All product specifications, warranty terms and obligations,
compliance guidelines, Statements of Work ("SOWs"), applicable Federal Acquisition Regulations ("FARs"), Defense Federal Acquisition Regulations ("DFARs") that apply to or are
incorporated by reference or by law into the Prime Contract (all of which shall be included in the "Prime Contract Documents") that are applicable to or binding upon Buyer shall apply to
and "flow down" from Buyer to Seller, and Seller agrees to perform all material obligations that Buyer is bound to perform, pursuant to the Prime Contract, a copy of which is either attached
hereto or separately available to Seller, and which is incorporated herein and integrated by reference.  Buyer's standard Terms and Conditions ("Terms") located at: https://www.darley.



14

Exhibit Ex. 5 – Echo MAV's website before June 11, 2025



**Standard Terms & Conditions of Sale** (March 2023)

**Quotes**

Price quotations are valid for a period of ninety (90) days unless otherwise noted on the quotation.

**Taxes**

Prices are exclusive of applicable sales, use, service, and like taxes which shall be the responsibility of the buyer at the time of purchase.

**Orders**

Orders will be accepted by written purchase order, sales order, signed quotation, or digitally through our online store. These terms and conditions apply exclusively to all orders. No other terms shall apply to any order unless accepted in writing by an authorized representative of EchoMAV, LLC. Orders will be accepted by EchoMAV, LLC in writing or through performance within 10 business days.

**Order Cancellation**

Orders for standard products offered in the company's standard product catalog may be cancelled prior to shipment by submitting, in writing, a request to cancel. Orders for custom products not offered in the company's standard product catalog may be cancelled in accordance with the terms of the purchase agreement or accepted quotation at the discretion of EchoMAV, LLC. If no such terms are included, then orders for products not offered in the company's standard product catalog may not be cancelled.

**Returns**

Returns for standard products offered in the company's standard product catalog can be returned in unopened and unused condition in the original undamaged packaging material for a full refund within 30 days of delivery. Returns for opened and/or used products may be returned at the discretion of EchoMAV, LLC. A standard restocking fee of 20% may be applied for opened and/or used equipment that is returned. Buyer shall be responsible for shipping costs incurred for returns.



Exhibit Ex. 6 – Echo MAV's website after June 11, 2025



**Standard Terms & Conditions of Sale** (May 2025)

**Quotes**

Price quotations are valid for a period of ninety (90) days unless otherwise noted on the quotation.

**Taxes**

Prices are exclusive of applicable sales, use, service, and like taxes which shall be the responsibility of the buyer at the time of purchase.

**Orders**

Orders will be accepted by written purchase order, sales order, signed quotation, or digitally through our online store. These terms and conditions apply exclusively to all orders. No other terms shall apply to any order unless accepted in writing by an authorized representative of EchoMAV Technologies, Inc.. Orders will be accepted by EchoMAV Technologies, Inc.in writing or through performance within 10 business days.

**Order Cancellation**

Orders for standard products offered in the company's standard product catalog may be cancelled prior to shipment by submitting, in writing, a request to cancel. Orders for custom products not offered in the company's standard product catalog may be cancelled in accordance with the terms of the purchase agreement or accepted quotation at the discretion of EchoMAV Technologies, Inc. If no such terms are included, then orders for products not offered in the company's standard product catalog may not be cancelled.

**Returns**

Returns for standard products offered in the company's standard product catalog can be returned in unopened and unused condition in the original undamaged packaging material for a full refund within 30 days of delivery. Returns for opened and/or used products may be returned at the discretion of EchoMAV Technologies, Inc. A standard restocking fee of 20% may be applied for opened and/or used equipment that is returned. Buyer shall be responsible for shipping costs incurred for returns.



Exhibit Ex. 7 – Judgement Against Echo MAV 1 of 5

**IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE**

| | | |
|---|---|---|
| HORIZON31, LLC | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3-62-25 |
| | ) | |
| ECHOMAV, LLC and WILLIAM KNOWLES, | ) | |
| | ) | |
| Defendants. | ) | |

### AGREED JUDGMENT

Come the parties and announce to the Court that, as evidenced by their signatures and/or the signature of their counsel set forth below, Defendants agree to the following:

1. To the extent the record does not reflect service of process, the Defendants waive service of process.

2. Pursuant to the Promissory Note and Guaranty dated February 16, 2023, Defendants owe Plaintiff a principal balance of One Million Three Hundred Twenty Thousand Dollars ($1,320,000.00) plus interest.

3. Defendants further agree to the entry of judgment in favor of Plaintiff and against Defendants for damages and other relief as requested by Plaintiff in the Complaint.

4. For purposes of clarification, this Agreed Judgment was signed pursuant to the terms of a Settlement Agreement and Conditional Mutual Release entered into by the parties pursuant to which Defendants were given the opportunity to pay Plaintiff the amount owed within sixty (60) days of March 21, 2025, to avoid judgment but further providing for the entry of judgment in the event payment was not received.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that

ATTEST 5-23-25
CERTIFIED A TRUE COPY

*Charles D. Susano III*
CIRCUIT COURT CLERK
*D-Byrd*



EXHIBIT
7

17

Exhibit Ex. 7 – Judgement Against Echo MAV 2 of 5

1.  Judgment is hereby entered in favor of Plaintiff and against Defendants Echo MAV, LLC and William Knowles, jointly and severally, in the amount of One Million Four Hundred Fifty-Two Thousand Three Hundred Eighty-Five and 22/100 Dollars ($1,452,385.22) with interest on the principal balance continuing to accrue at the contract rate of the "maximum rate allowed by law until paid in full."

2.  Judgment is also hereby entered in favor of Plaintiff and against Defendants, jointly and severally, for Plaintiff's attorney fees and litigation expenses in the amount of Four Thousand Six Hundred Dollars ($4,600.00).  Plaintiffs reserve the right to seek recovery of additional attorney fees and litigation expenses in any subsequent proceedings necessary to collect this judgment.

3.  Plaintiff is entitled to judgment in favor of Plaintiff and against Defendant Echo MAV, LLC pursuant to the Security Agreement dated March 10, 2023, providing that Plaintiff is entitled to possession of the Collateral that is the subject of the Security Agreement and further entitled to exercise all rights available to Plaintiff pursuant to the Security Agreement.

4.  Any unpaid court costs shall be taxed to the Plaintiff at the address of its counsel which appears below, execution for which shall issue if necessary.

6.  This order, having resolved all issues in dispute among all parties, shall constitute a final judgment.

ENTER this _21_ day of __May_____, 2025.

Honorable Deborah C. Stevens, Judge

2

Exhibit Ex. 7 – Judgement Against Echo MAV 3 of 5

APPROVED FOR ENTRY:

Danny P. Dyer (BPR # 016666)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee  37901-1990
(865) 525-5300
dpd@tennlaw.com
Attorney for Plaintiff

Exhibit Ex. 7 – Judgement Against Echo MAV 4 of 5

<u>Signatures of Defendants to Agreed Judgment</u>

Echo MAV, LLC

By: _____

Its: _____Manager_____

STATE OF _Nevada_
COUNTY OF _Clark_

    Before me, the undersigned authority, a Notary Public for the said County and State, personally appeared William Knowles with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged himself/herself to be _manager_____ (or other officer authorized to execute the instrument) of Echo MAV, LLC the within named bargainor, a New Mexico limited liability company, and that he/she as such officer, executed the foregoing instrument for the purpose therein contained, by signing the name of the company, by himself/herself as such officer.

    Witness my hand and seal at office, this _05th_ day of _March_____, 2025.

_____
Notary Public

My Commission Expires: _11-27-27____

BRANDY GALVEZ
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 11-27-27
Certificate No: 16-1369-1

4

Exhibit Ex. 7 – Judgement Against Echo MAV 5 of 5

Signature of Defendants to Agreed Judgment (continued)

_William Knowles_

STATE OF _Nevada_
COUNTY OF _Clark_

Personally appeared before me, Notary Public of said County, WILLIAM KNOWLES, the within named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he executed the foregoing instrument for the purposes therein contained.

Witness my hand, at office, this _25th_ day of _March_____, 2025.

_Notary Public_

My Commission Expires: ___11-27-27_____

BRANDY GALVEZ
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 11-27-27
Certificate No: 16-1369-1

5

21

Exhibit Ex. 8. Communications from Mr. Hodges to Mr. Stinson informing him of the vehicle listing





Exhibit Ex. 9 – Bill of Sale for 1997 Land Cruiser 1 of 2

## Vehicle Bill of Sale

This Bill of Sale is made and entered into by and between:

Seller:

Brian Hall
17050 578th Ave,
Good Thunder, MN 56037

Buyer:

Brad Stinson
2539 Shady Meadow Ln,
Knoxville, TN 37932

Vehicle Details:

- Make: Toyota
- Model: FZJ80 Land Cruiser
- Year: 1997
- VIN: JT3HJ85J0V0180088
- Mileage: 190,0xx miles

Terms of Sale:

1. Sale Price: The total purchase price for the vehicle is $40,000 (U.S. Dollars).

2. Payment: The Buyer agrees to pay the Seller the total sale price via wire transfer on or before taking procession of the vehicle.

3. Vehicle Condition: The vehicle is sold as-is, without any warranties or guarantees, express or implied, regarding its condition or performance. The Buyer acknowledges and accepts the current condition of the vehicle.

4. Odometer Disclosure: The Seller certifies to the best of their knowledge that the odometer reading of 190,0xx miles is accurate. The buyer acknowledges that an engine and transmission swap have been made from a doner vehicle(s).

5. Title and Ownership: The Seller agrees to transfer full ownership and legal title of the vehicle to the Buyer upon receipt of the sale price. The Seller confirms that the vehicle is free from all liens, loans, and encumbrances.

6. Delivery of Vehicle: The Buyer assumes responsibility for the vehicle at the time of sale. All risks associated with transportation or use after the sale will be borne by the Buyer.



EXHIBIT
9

Exhibit Ex. 9 – Bill of Sale for 1997 Land Cruiser 2 of 2

Seller's Signature:                              Buyer's Signature:

*Brian Hall*                                     *Brad Stinson*
Brian Hall                                       Brad Stinson

Date: 20/09/24                                   Date: 20/09/24

This document serves as a legal contract of sale between the Buyer and the Seller.