## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION AT KNOXVILLE

| | | |
|---|---|---|
| **In re** | : | |
| | : | |
| **Echo MAV, LLC** | : | **Case No. 3:25-bk-31122-SHB** |
| **Aka EchoMAV, LLC** | : | |
| | : | |
| **Alleged Debtor** | : | **Chapter 7 (Involuntary)** |

### HORIZON31, LLC's FIRST REQUEST FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Comes Horizon 31, LLC ("Horizon), by and through counsel, and pursuant to Federal Rules of Bankruptcy Procedure 7026, 7033, 7034 and 7036, to propound the following First Requests for Admissions, Interrogatories, and Requests for Production of Documents (sometimes collectively, "The Discovery Requests") to Echo MAV, LLC ("Echo MAV"). The responses to the Discovery Requests shall be made in writing under oath within thirty (30) days from the date of service as provided by law, and a copy of the responses is to be furnished to Horizon's attorneys, Gentry, Tipton & McLemore, P.C., 2300 Riverview Tower, 900 S. Gay Street, Knoxville, Tennessee 37902.

### INSTRUCTIONS AND DEFINITIONS

(a)    The full text of the following instructions and definitions set forth herein is deemed incorporated by reference into all discovery requests, but shall not preclude (i) the definition of other terms specific to the particular litigation, (ii) the use of abbreviations, or (iii) a more narrow definition of a term defined in paragraph (d).

(b)    Please answer each Interrogatory and Request in writing, separately and fully, under oath, and within the time prescribed by the Federal Rules of Civil Procedure. In responding,

1

Echo MAV is requested to set out the Interrogatory and Request verbatim and then state its response.

(c)    These Instructions and Definitions are not intended to broaden or narrow the scope of discovery permitted by the Federal Rules of Bankruptcy Procedure.

(d)    The following definitions apply to all discovery requests:

(1)    <u>Communication</u>.    The term "communication" means the transmittal of information in the form of fax, ideas, inquiries, or otherwise.

(2)    <u>Document</u>. The term "document" means all writings of any kind or nature and is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.  A draft of a non-identical copy is a separate document within the meaning of this term.

(3)    <u>Identify (with respect to persons)</u>. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, telephone number and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4)    <u>Identify (with respect to documents)</u>.  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5)    <u>Parties</u>. The terms "Horizon" and "Echo MAV" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its

officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6)    <u>Person</u>.  The term "person" is defined as any natural person, business, legal or governmental entity, or association.

(7)    <u>Concerning</u>.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

(e)    The following rules of construction apply to all discovery requests;

(1)    <u>All/Each</u>.  The terms "all" and "each" shall be construed as all and each.

(2)    <u>Number</u>.  The use of the singular form of any word includes the plural and vice versa.

(f)    These Discovery Requests are continuing, and supplemental answers shall be required immediately upon receipt of different or additional information by Echo MAV, either directly or indirectly, from the time Echo MAV's responses are served on Horizon until the time of trial.  See Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(e).

(g)    In responding to these Discovery Requests, please set forth each discovery request in full together with the response thereto.

## REQUESTS FOR ADMISSIONS

(1)    Admit that Knoxville, Tennessee was the principal place of business for Echo MAV during the 180-day period preceding June 12, 2025.

**<u>ANSWER:</u>**

(2)    Admit that Knoxville, Tennessee was the location of the principal assets of Echo MAV during the 180-day period preceding June 12, 2025.

**ANSWER:**


(3)    Admit that Exhibit 6 to the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11) is inaccurate. A copy of Exhibit 6 is attached hereto as Exhibit 13.

**ANSWER:**


(4)    Admit that the following listed on Exhibit 13 are and/or were insiders, as defined in the Bankruptcy Code, of Echo MAV on June 12, 2025:

      (a)    Kenneth Porter

      (b)    Michael Hodges

      (c)    Outlaw Solutions Group, LLC

      (d)    Telum Development Group

**ANSWER:**


(5)    Admit that the following listed on Exhibit 13 are and/or were employees of Echo MAV on June 12, 2025:

      (a)    Michael Hodges

      (b)    Nate Garrison

      (c)    Kenneth Porter

**ANSWER:**

(6)    Admit that George McMahan, the landlord for the Lubbock office lease, was not a creditor on the June 12, 2025 Petition Date, because the rent had been fully paid and no future amount was owing under the terms of the lease.

**ANSWER:**

(7)    Admit that the collateral Horizon holds for the payment of the Echo MAV Promissory Note in the amount of $1,500,000 is the type of property that depreciates in value.

**ANSWER:**

(8)    Admit that in 2024 Echo MAV's customers were instructed to issue purchase orders to Echo MAV Technologies, Inc. instead of to Echo MAV.

**ANSWER:**

(9)    Admit that Echo MAV Technologies, Inc. has not acquired Echo MAV's assets, property interests, or technology.

**ANSWER:**

(10)    Admit that Denny Eugene Trey Sprinkle III ("Mr. Sprinkle"), and Mr. Michael Hodges have used Echo MAV assets for their own benefit.

**ANSWER:**

(11)    Admit that in October 2024 Mr. Sprinkle issued, or caused to be issued, purchase orders to vendors for components which Echo MAV had used to build products, and Echo MAV Technologies, Inc. began building the products and billing former Echo MAV customers.

**ANSWER:**

(12)    Admit that Mr. Sprinkle told Brad Stinson that Echo MAV had failed to maintain books and records about its financial affairs, and Echo MAV was having a challenging time getting a loan or investment in or about March 2025.

**ANSWER:**

(13)    Admit that in or about March 2025 Mr. Sprinkle told Brad Stinson that Echo MAV had not filed a federal tax return for the past three years.

**ANSWER:**

(14)    Admit that company meetings for Echo MAV were regularly held in the Knoxville, Tennessee office.

**ANSWER:**

(15)    Admit that no engineering, manufacturing or production occurred in the Echo MAV Lubbock, Texas office.

**ANSWER:**

6

(16)    Admit that there were no significant assets of Echo MAV located in the Lubbock office as of May 2025.

**ANSWER:**

(17)    Admit that during the Spring of 2025 assets and technology belonging to Echo MAV were being used by Echo MAV Technologies, Inc. to manufacture products.

**ANSWER:**

(18)    Admit that in May 2025 Echo MAV Technologies, Inc. received large payments for products it sold.

**ANSWER:**

(19)    Admit that Arrow Electronics was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(20)    Admit that Booz Allen Hamilton was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(21)    Admit that Circuit Hub was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(22)    Admit that Clear Path Marketing was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(23)    Admit that Hybrid Project, LLC was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(24)    Admit that Irradiate LLC was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(25)    Admit that Microhard Systems was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(26)    Admit that NW Blue LLC was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(27)    Admit that Passage Consulting Group was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(28)    Admit that Republic Capital Access was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(29)    Admit that Seek Thermal was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(30)    Admit that Vol Case & Containers was not a creditor of Echo MAV on the June 12, 2025 Petition Date.

**ANSWER:**

(31)    Admit that the quote shown in <u>Exhibit 1</u> was generated by Todd Madison, VP of Business Development and was sent to the US Army by EchoMAV, LLC.

**ANSWER:**

(32)    Admit that the purchase order shown in <u>Exhibit 2</u> was received by EchoMAV Technologies, Inc. and originated from the quote issued in <u>Exhibit 1</u>.

**ANSWER:**

(33)    Admit that the communication on June 4, 2025 in <u>Exhibit 3</u> was not from Benjamin Castor, but from another Echo MAV employee who used Mr. Castor's account to persuade Mr. Stinson's actions.

**ANSWER:**


(34)    Admit that the communication in <u>Exhibit 4</u> is from Mr. Sprinkle and directs employees to continue the use of Echo MAV's credit cards for certain categories of purchases.

**ANSWER:**


(35)    Admit that the communication in <u>Exhibit 5</u> is from Mr. Sprinkle and asks if Mr. Knowles can "shut off" the website domain echomav.com.

**ANSWER:**


(36)    Admit that the communication in <u>Exhibit 6</u> is from Mr. Sprinkle and asks questions regarding Mr. Knowles ownership and influence over the "echomav.com" domain.

**ANSWER:**


(37)    Admit that the communication in <u>Exhibit 7</u> is from Mike Hodges and directs Mr. Stinson to remove Mr. Knowles from "email distros" regarding sales.

**ANSWER:**

(38)    Admit that the communication in <u>Exhibit 8</u> is from Mr. Sprinkle and claims ownership of Echo MAV's IP by "Outlaw" and that EchoMAV Technologies Inc., intends to purchase the IP for one dollar.

**ANSWER:**


(39)    Admit that the communication in <u>Exhibit 9</u> is between Mr. Sprinkle, Mr. Hodges and Mr. Stinson and that Mr. Stinson expresses concern that EchoMAV Technologies does not own the intellectual property it is selling.

**ANSWER:**


(40)    Admit that the communications in <u>Exhibit 10</u> and <u>Exhibit 11</u> are between Mr. Stinson, Dr. Harter, Mr. Sprinkle and Mr. Hodges and provide evidence that Horizon attempted negotiation.

**ANSWER:**


(41)    Admit that the communication in <u>Exhibit 12</u> is from Mr. Sprinkle and threatens Mr. Stinson by suggesting his actions related to negotiation of debt payback and discussing a public domain lawsuit are felonies.

**ANSWER:**


(42)    Admit that Mr. Stinson did not delete MONARK drone development files and records as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(43)    Admit that Mr. Stinson did not delete four computers, did not copy eight hard drives and did not delete multiple Echo MAV files as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(44)    Admit that Mr. Stinson did not instruct Echo MAV engineers to stop working and did not claim that "all of Echo MAV's property" now belonged to him as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(45)    Admit that neither Horizon nor Mr. Stinson is withholding any data, files or content from EchoMAV as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(46)    Admit that EchoMAV has full access to all its data systems, websites, communication and cloud services, contrary to allegations in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(47)    Admit that EchoMAV has no evidence or basis for the assertion that Mr. Stinson discussed Echo MAV's insolvency with a Rob Leach, a 5th Group Procurement Officer, Persistent Systems or Darley Defense as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**


(48)    Admit that Mr. Stinson provided all requested data, information, files or access in a timely manner after it was requested by Echo MAV, EchoMAV Technologies, Inc. or a representative of one of those entities after his resignation.

**ANSWER:**


(49)    Admit that Mr. Stinson transferred EchoMAV-owned Circuithub designs into an EchoMAV group, for any EchoMAV user to access within three days of his resignation.

**ANSWER:**


(50)    Admit that EchoMAV used Mr. Stinson's EchoMAV email account to reset his Circuithub password, and accessed his personal Circuithub designs, including obtaining access to designs which were not EchoMAV's property, and which were covered by NDAs with other entities whom Mr. Stinson had worked for in the past.

**ANSWER:**

(51)    Admit that despite having access to Circuithub, Mr. Sprinkle makes claims that EchoMAV did not have access to these files in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(52)    Admit that EchoMAV has no evidence or basis for the assertion that Mr. Stinson attempted to redirect payment from Darley Defense to himself as alleged in the Declaration of Denny Eugene Trey Sprinkle, III In Support of Motion to Dismiss Involuntary Bankruptcy Petition ("Declaration") (Doc 11).

**ANSWER:**

(53)    Admit that EchoMAV Technologies Inc. misused proprietary information and processes belonging to other entities for the personal gain of the sole owner of Echo MAV Technologies, Inc., Mr. Sprinkle.

**ANSWER:**

(54)    Admit that EchoMAV Technologies, Inc. made unauthorized use of EchoMAV's credit cards for certain categories of purchases for which EchoMAV Technologies knew had no bearing on intellectual property ownership and would become the debt of Mr. Knowles, evidenced by Exhibit 4.

**ANSWER:**

14

(55)    Admit that EchoMAV Technologies knowingly deceived customers and vendors by operating as an entity with a confusingly similar name to EchoMAV and did not inform customers or vendors that the two entities were unrelated beyond the personal involvement of Mr. Sprinkle as a managing director/CEO of EchoMAV and as the owner of EchoMAV Technologies, Inc.

**ANSWER:**

(56)    Admit that Mr. Sprinkle told Mr. Stinson that the owner of Echo MAV, Mr. Knowles, had no knowledge of the tortious actions being taken by EchoMAV Technologies, Inc. and that Mr. Sprinkle "would like to keep it that way."

**ANSWER:**

(57)    Admit that EchoMAV Technologies, Inc. made no attempt to change branding, product names or logos from those used by EchoMAV.

**ANSWER:**

(58)    Admit that EchoMAV Technologies, Inc. was wholly owned by Mr. Sprinkle as of June 12, 2025.

**ANSWER:**

(59)    Admit that Mr. Sprinkle has been and/or is the CEO or and/or Managing Director for EchoMAV, LLC.

**ANSWER:**

15

(60)    Admit that Mr. Hodges has been the President and/or Managing Director for EchoMAV, LLC.

**ANSWER:**

(61)    Admit that EchoMAV Technologies, Inc. accepted electronic payments from Darley Defense and other customers and used electronic communication systems in these transactions.

**ANSWER:**

## INTERROGATORIES

1.    State Echo MAV's current business addresses, dates of occupancy, telephone numbers, email addresses, website and social media addresses and usernames.

**ANSWER**:

2.    Please identify the person or persons answering these Discovery Requests or who contributed information used in answering these Discovery Requests.  If more than one person provided the answers or information, please identify the specific Interrogatory or Request answered by each person.

**ANSWER**:

3.      Please state the name, current business and home addresses and telephone numbers, and occupation of each person whom you expect to call as an expert witness at trial. For each such person so identified, state the subject matter on which the person is expected to testify, a summary of the grounds for each opinion, each such person's qualifications to render the opinions which he or she will give at trial, a list of all publications authored in the previous ten years by each such person, a list of all other cases in which, during the previous four years, each such persons testified as an expert, and a statement of the compensation to be paid to each such person for his or her study and testimony in the case.

**ANSWER**:

4.      List and describe all facts and evidence which support(s) the allegations of the Motion to Dismiss (Doc 10), including but not limited to photographs, videos, documentary evidence, and the names, telephone numbers and addresses of all persons whom you believe to have knowledge of the facts underlying the allegations contained within Echo MAV's Motion to Dismiss.

**ANSWER**:

5.      To the extent not previously disclosed herein, please give a specific and detailed listing of each and every fact, witness, person, or document upon which Echo MAV relies to support the Motion to Dismiss (Doc 10).

**ANSWER**:

6.      If Echo MAV admits Request for Admission #3, identify the inaccuracies in Exhibit 13  (Exhibit 6 to the Declaration).

**ANSWER:**


7.      If Echo MAV denies Request for Admission 7, identify all facts and reasons for Echo MAV's denial.

**ANSWER:**


8.      What was the value of the Horizon's collateral for the payment of Echo MAV's Promissory Note as of the June 12, 2025 Petition Date?

**ANSWER:**


9.      Identify Echo MAV's principal assets and their location as the of June 12, 2025 Petition Date.

**ANSWER:**


10.     Identify the ten (10) Echo MAV employees claimed to be based in the Lubbock, Texas area as of the June 12, 2025 Petition Date.

**ANSWER:**


11.     Identify the entities or persons Mr. Sprinkle has contacted in 2024 and 2025 about an investment in or loan to Echo MAV to pay Horizon in full.

**ANSWER:**

12.    Identify all facts supporting Echo MAV's contention it was generally paying its debts as the debts came due as of the June 12, 2025 Petition Date.

**ANSWER:**

13.    Identify Echo MAV's creditors and state the amount of each creditor's claim as of the June 12, 2025 Petition Date.

**ANSWER:**

14.    Identify any creditors of Echo MAV as of the June 12, 2025 Petition Date who have received postpetition payments on prepetition claims from Echo MAV or on behalf of Echo MAV and state the amount(s) and date(s) of payment.

**ANSWER:**

15.    Please state whether Denny Eugene Sprinkle III a/k/a Trey Sprinkle or any other officer or authorized agent of Echo MAV and/or Echo MAV Technologies, Inc. has ever been convicted or pled either guilty or no contest to any crime under federal or state law and, if so, identify the court in which he or they were convicted or pled not guilty or no contest, state the nature of the offense and the approximate date of the conviction or plea.

**ANSWER:**

16.    If the response to Interrogatory # 15 is in the affirmative, please state whether Denny Eugene Sprinkle, III or any other officer or authorized agent of Echo MAV and/or Echo

MAV Technologies, Inc. have been on probation, parole, or supervised release with any state or

federal agency and, if so, please state the termination date of each such probation, parole or

supervised release.

**ANSWER:**

17.    Identify the products Echo MAV Technologies, Inc. manufacturers/produces.

**ANSWER:**

**REQUESTS FOR PRODUCTION**

1.    Produce all documents or things relating to, consulted, and/or identified in your

responses to the foregoing Discovery Requests.

**ANSWER**:

2.    Produce all documents and things which Echo MAV contends support Echo

MAV's claims and/or which Echo MAV intends to offer in evidence at trial.

**ANSWER**:

3.    Produce all documents and records relating to any expert witness whose testimony

Echo MAV may offer in this case, including but not limited to the expert's report(s) (including all

drafts and working papers thereof) resumes, correspondence, emails, fee charts, invoices, listing

of all cases testified in, and such expert's entire working file.

**ANSWER**:

4.      Produce any and all documents and materials provided to or reviewed by any expert witness Echo MAV expects to offer at trial, without regard to whether any document forms the basis of the expert's opinion, or whether or not said documents were found by the expert to be helpful.

**ANSWER**:


5.      Produce any and all documents or things that prove, verify or substantiate any fact which Echo MAV contends is relevant to the statements in the Motion to Dismiss (Doc 10) and the Declaration (Doc 11).

**ANSWER**:


6.      Produce any and all documents and records for Echo MAV's accounts payable for the one year period preceding June 12, 2025.

**ANSWER**:


7.      Produce any and all documents and records for Echo MAV's accounts receivable for the one year period preceding June 12, 2025.

**ANSWER:**


8.      Produce any and all financial statements prepared by or on behalf of Echo MAV in the one year period preceding June 12, 2025.

**ANSWER:**

9.    Produce copies of any and all balance sheets prepared by or on behalf of Echo MAV in the one year period preceding June 12, 2025.

**ANSWER:**

10.    Produce copies of all communication between Echo MAV and its creditors about payment of the creditors' claims in the one year period preceding June 12, 2025.

**ANSWER:**

11.    Produce copies of all communication between Echo MAV and Echo MAV's accountants in the one year period preceding June 12, 2025.

**ANSWER:**

12.    Produce copies of all Echo MAV bank account statements, including copies of cancelled checks, or other financial accounts, for the one year period preceding June 12, 2025.

**ANSWER:**

13.    Produce copies of all deposit records to all of Echo MAV bank accounts or other financial accounts for the one year period preceding June 12, 2025.

**ANSWER:**

14.    Produce copies of all wire transfers requested by or on behalf of Echo MAV in the one year period preceding June 12, 2025.

**ANSWER:**

15.     Produce copies of Echo MAV's filed federal income tax returns for 2022, 2023 and 2024.

**ANSWER:**

16.     Produce copies of any state tax returns filed by Echo MAV in 2022, 2023, and/or 2024.

**ANSWER:**

17.     Produce copies of all leases for real property to which Echo MAV was a party as of the June 12, 2025 Petition Date.

**ANSWER:**

18.     Produce copies of all Echo MAV Technologies, Inc. bank account statements, including cancelled checks and deposit records, for the one year period preceding June 12, 2025.

**ANSWER:**

19.     Produce copies of American Express account statements for Echo MAV for the one year period preceding June 12, 2025.

**ANSWER:**

20.     Produce copies of American Express account statements for Echo MAV Technologies, Inc. for the one year period preceding June 12, 2025.

**ANSWER:**


21.     Produce copies of invoices/statements from each entity or person listed on <u>Exhibit</u> <u>13</u> evidencing a claim against Echo MAV as of June 12, 2025.

**ANSWER:**


22.     Produce copies of invoices/statements from each entity or person not listed on <u>Exhibit 13</u> evidencing a claim against Echo MAV as of June 12, 2025.

**ANSWER:**


23.     Produce documents, if any, evidencing the transfer of any asset or property interest or technology of Echo MAV to Echo MAV Technologies, Inc.

**ANSWER:**


24.     Produce copies of all Echo MAV bank account statements, including copies of cancelled checks, or other financial accounts for the period June 12, 2025 up to the date of Echo MAV's response to these Discovery Requests.

**ANSWER:**


25.     Produce copies of all Echo MAV communications, sales reports and payments to UT-Battelle as required by the exclusive license agreement.

**ANSWER:**

26.    If Echo MAV denies Request for Admission 42, identify all facts and reasons for Echo MAV's denial, produce serial numbers, images and a report from a qualified professional providing evidence that these items were deleted or copied by Mr. Stinson.

**ANSWER:**


27.    If Echo MAV denies Request for Admission 43, identify all facts and reasons for Echo MAV's denial, produce serial numbers, images and a report from a qualified professional providing evidence that these items were deleted by Mr. Stinson.

**ANSWER:**


28.    If Echo MAV denies Request for Admission 44, identify all facts and reasons for Echo MAV's denial, including sworn statements from EchoMAV employees who claim that Mr. Stinson made these statements.

**ANSWER:**


29.    If Echo MAV denies Request for Admission 45, identify all facts and reasons for Echo MAV's denial, including evidence that EchoMAV has requested data, files or other content from Mr. Stinson and/or Horizon and has been denied.

**ANSWER:**


30.    If Echo MAV denies Request for Admission 46, identify all facts and reasons for Echo MAV's denial, including listing, corresponding evidence and a full audit log concerning any data, website, communication system or cloud service which cannot be accessed by EchoMAV.

**ANSWER:**

31.     If Echo MAV denies Request for Admission 47, identify all facts and reasons for Echo MAV's denial, including evidence that Mr. Stinson discussed EchoMAV's insolvency with any of the parties claimed.

**ANSWER:**

32.     If Echo MAV denies Request for Admission 50, identify all facts and reasons for Echo MAV's denial, including a full record, communications and staff statements concerning when EchoMAV accessed design files stored on Circuithub and what method was used for accessing these files.

**ANSWER:**

33.     If Echo MAV denies Request for Admission 52, identify all facts and reasons for Echo MAV's denial, including evidence that Mr. Stinson attempted to redirect payment from Darley Defense to himself.

**ANSWER:**

34.     Produce copies of purchase agreements and all associated communication and legal documents concerning the purchase of, or transfer of, EchoMAV's assets to Outlaw Media, Outlaw Solutions, Echo MAV Technologies, Mr. Hodges or Mr. Sprinkle.

**ANSWER:**

35.    Produce all communications and signed documents or contracts between Mr. Knowles and Mr. Sprinkle or Mr. Hodges concerning EchoMAV, Echo MAV Technologies, Outlaw Media, Outlaw Solutions, Telum Development Group or any other entity with which Mr. Sprinkle or Mr. Hodges was/is involved in.

**ANSWER:**

35.    Produce a copy of all emails received and sent from Mr. Stinson's EchoMAV email address (bstinson@echomav.com and all aliases) after his resignation on May 19, 2025.

**ANSWER:**

37.    If Echo MAV denies Request for Admission 16, provide a list of all EchoMAV's assets valued at over $1000 and their location 180 days prior to the June 12, 2025 Petition Date.

**ANSWER:**

38.    Produce all communication between Mr. Sprinkle and Mr. Hodges concerning the payment of the Horizon debt.

**ANSWER:**

39.    Produce all communication between Mr. Sprinkle and Mr. Hodges concerning the Involuntary Petition for Bankruptcy filed by Horizon.

**ANSWER:**

40.     Produce all communication, contracts or other documents between Mr. Sprinkle and Mr. Knowles regarding the acquisition or transfer of Echo MAV to another entity or to a person.

**ANSWER:**

41.     Produce all communication, contracts or other documents between Mr. Hodges and Mr. Knowles regarding the acquisition or transfer of Echo MAV to another entity or to a person.

**ANSWER:**

42.     Produce all communication between Mr. Hodges and Mr. Sprinkle regarding the acquisition of Horizon.

**ANSWER:**

43.     Produce all communication between Mr. Hodges and Mr. Knowles regarding the acquisition of Horizon.

**ANSWER:**

44.     Produce all communication between Mr. Sprinkle and Mr. Knowles regarding the acquisition of Horizon.

**ANSWER:**

45.    Produce copies of the Echo MAV organization documents, including but not limited to: (a) Articles of organization; (b) Operating Agreement and any amendments; (c) any documents evidencing ownership; and (d) any documents evidencing transfer(s) of ownership.

**ANSWER:**


46.    Produce copies of the organization documents of Echo MAV Technologies, Inc., including but not limited to: (a) Charter; (b) Bylaws; (c) stock certificates; (d) documents evidencing transfer of ownership; and (e) identity of the shareholders.

**ANSWER:**


47.    Produce copies of the invoices paid for any creditors identified in response to Interrogatory #14 as having been paid postpetition on a prepetition claim.

**ANSWER:**


Respectfully submitted this 13th day of August, 2025.

Maurice K. Guinn    000366
Gentry, Tipton & McLemore, P.C.
P. O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300
Attorneys for Horizon31, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served upon Stephen M. Montgomery electronically by email to smontgomery@dickenson-wright.com and by regular first-class mail, in an envelope addressed as follows, this 18th day of August, 2025:

Stephen M. Montgomery
424 Church Street, Suite 800
Nashville, TN   37219

Maurice K. Guinn

**Exhibit 1**



# QUOTE

**Echo MAV, LLC**

**QUOTE NO. 2024-08-05**
DATE:05 Aug 2024

6310 Genoa Ave, Suite A
Lubbock, TX 79424 USA
Phone: 806-809-5023
sales@echomav.com

**VALID FOR: 60 DAYS**

TO   Matthew LeMay
     matthew.b.lemay2.mil@army.mil
     2LBCT(P), 25th Infantry Division

Notes: Est 6-8 weeks depending on configuration.

| PROVIDED BY | PAYMENT TERMS | SHIPPING |
|---|---|---|
| Todd Madison | Negotiable | TBD |

| ITEM | DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| **MK1 AIRCRAFT W/SENOR** | Mk1 Airframe, HD EO/IR camera w/ 80x zoom, EchoPilot-ORIN AI flight controller, and aircraft battery charger. Includes spare parts, tool kit, operator/maintenance manuals, flight testing and packaging. | 3 | $217,631 | $652,893 |
| **TACTICAL GCS** | 10" ruggedized, IP67-rated tablet, cables, and antennas | 2 | $15,000 | $30,000 |
| **LAPTOP / CONTROLLER** | Highspeed Toughbook Laptop with gamepad controller | 1 | $5,250 | $5,250 |
| **Antenna** | Sector Antenna and Tripod, and pelican case | 2 | $17,352 | $34,704 |
| **\*\*Optional\*\* 5G/LTE connection** | Places a 5g/LTE connection on Aircraft to allow direct streaming of Sensor video to any web connected device. Requires LTE service plan and coverage over Aircraft flight plan. | 1 | $5,000 | $5,000 |

| TRAINING | On-site in CO Springs or On-Location for customer. 1 Instructor per 4 students for approx..10 days. (AT Scofield Barracks, HI) | 2 | 29,000 | $58,000 |
| | | | Shipping | TBD |
| | | | Tax | TBD |
| | 5G option Not included | Total | | $ 780,847 USD |

Please review our Terms and Conditions:  https://echomav.com/terms/
*These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. government or as otherwise authorized by U.S. law and regulations.*

**SUPPORT:** EchoMAV, LLC is committed to compliance with all U.S. Export Regulations and Laws. EchoMAV, LLC will not sell or ship to countries embargoed by the U.S. Treasury Office of Foreign Asset Control (OFAC). EchoMAV, LLC will not sell or ship to individuals or organizations identified by the U.S. Treasury as Specially Designated Nationals and Blocked Persons. EchoMAV, LLC will not sell, or ship products prohibited under Export Administration Regulations to individuals or organizations identified by the U.S. Department of Commerce, Bureau of Industry and Security (BIS). EchoMAV, LLC will not seek export licenses pursuant to Export Administration Regulations. EchoMAV, LLC participates in BIS Export Enforcement and OFAC transaction reporting. Furthermore, EchoMAV, LLC prohibits the re-export, brokering or transshipment of its products to any individual, organization or country prohibited by the OFAC or BIS. The sale, resale or other disposition of Products, and any related technology or documentation, are subject to the export control laws, regulations and orders of the United States and may be subject to the export and/or import control laws and regulations of other countries. Customer agrees to comply with all such laws, regulations, and orders. Customer further acknowledges that it shall not directly or indirectly export any Products to any country to which such export or transmission is restricted or prohibited. Customer acknowledges its responsibility to obtain any license to export, re-export or import as may be required.

EchoMAV, LLC provides new equipment maintenance training to support initial maintainer / crew chief qualifications to sustain system equipment during day-to-day operations. This includes system assembly / disassembly, installation / removal of line replaceable units (LRU).
EchoMAV, LLC provides specialized / advance instruction to qualify platform trainers and evaluators with the knowledge and understanding of how to successfully operate and/or maintain the system.

EchoMAV, LLC will provide sustainment level maintenance support. Such as Telephone and email Helpdesk support, advance troubleshooting support and system repair service actions requiring use of special tooling and equipment, performing system configuration management (CM) and inventory monitoring with serialized items, performing part obsolescence notification, provide consumables and spare parts replenishment packages.

EchoMAV, LLC will also provide a Field Service Representative (FSR) support to assist the end user with the storage and tracking of inventory, assisting the end user in the development of site and Standard Operational Procedure (SOP) planning, with initial system emplacement, with necessary clearances, frequency deconfliction, and operational check-outs needed to enable full operations, overseeing scheduled operations and maintenance activities, logistics support and returns for warranty actions, as needed supplemental training and incorporating Field Service Bulletins (FSB's).

Our products are warranted for one year from the date of purchase to be free from defects in material and workmanship. Any such defects of which EchoMAV, LLC receives written notice shall be, at the manufacturer's option, repaired or replaced with a new, repaired, or refurbished product of equal value in exchange without charge (except for a fee for shipping, handling, packing, return postage, and insurance which will be incurred by the customer). This warranty applies to products used for their intended purpose.
EchoMAV, LLC provides structured training material and qualification certificates and shall provide a copy of written commercial warranties [as appropriate] for the proposed system.

**Exhibit 2**



**W.S. DARLEY & CO.**
**CORPORATE HEADQUARTERS**
325 SPRING LAKE DR • ITASCA, IL 60143-2072
Toll Free: 800-323-0244 • Phone: 630-735-3500 • FAX: 630-735-3560
FEIN 36-0976610   DUNS 005094842   CAGE 15852

| | **Purchase Order** | |
|---|---|---|
| PO No: | 189145 |
| Supplier No: | 41002782 |
| Contract No: | SPE8EJ21D0025 |

**To:**
ECHOMAV TECHNOLOGIES INC
6310 GENOA AVE STE B
LUBBOCK TX 79424-2708
United States

**Ship To:**
W91V91
0025 IN HHC 02 HEADQUARTERS IN
BLDG 1700 LYMAN ROAD
2ND BCT 25TH ID
SCHOFIELD BARRACKS HI 96857-6048
United States

Delivery Order #:  SPE8EL25FJ00D

Phone:  806 705-8382
Email:   dhavir@echomav.com

| PO Date | FOB Terms | Buyer | Terms | Shipment Method |
|---|---|---|---|---|
| 10/29/2024 | FREIGHT PREPAY ADD TO INVOICE | ANTHONY LORIG | NET 30 | UPS OR BEST WAY / |

| Part Number / Description | Requisition No | Required Delivery | Qty/UOM | Unit Cost | Extended Cost |
|---|---|---|---|---|---|
| MK1-ACPSYNO-TPS SYSTEM, MK1 AIRCRAFT | W91V9142701FYG | 1/31/2025 | 6 EA | $290,237.00 | $1,741,422.00 |
| MK1TRNG-R TRAINING, MK1 | W91V9142701FYG | 1/31/2025 | 2 EA | $48,962.60 | $97,925.20 |

ORDER INSTRUCTIONS:
REFERENCE QUOTE IN RESPONSE TO RFO: 20240826879447. REQUISITION NUMBER W91V9142701FYG MUST BE INCLUDED ON ALL SHIPPING LABELS AND PACKING SLIPS. INVOICES AND TRACKING NUMBERS MUST BE EMAILED TO DEFENSESHIPPING@DARLEY.COM.  THIS IS A DPAS DO-C9 RATED ORDER CERTIFIED FOR NATIONAL DEFENSE USE. THE SUPPLIER IS REQUIRED TO FOLLOW ALL PROVISIONS OF THE DEFENSE PRIORITIES AND ALLOCATIONS SYSTEM REGULATION (15 CFR 700).

DELIVERY CONTACT NAME AND PHONE NUMBER: MATTHEW LEMAY 520-678-5488

**Total: $1,839,347.20**

Please reference our purchase order on all correspondence. Notification of changes regarding quantities to be shipped and changes in the delivery schedule are required. Email:
defensepurchasing@darley.com. Order Confirmation required. Please advise shipping date and confirmation date.

This Purchase Order is issued in fulfillment of Federal Contract Number (the Prime Contract/Contract Number above).  All product specifications, warranty terms and obligations, compliance guidelines, Statements of Work ("SOWs"), applicable Federal Acquisition Regulations ("FARs"), Defense Federal Acquisition Regulations ("DFARs") that apply to or are incorporated by reference or by law into the Prime Contract (all of which shall be included in the "Prime Contract Documents") that are applicable to or binding upon Buyer shall apply to and "flow down" from Buyer to Seller, and Seller agrees to perform all material obligations that Buyer is bound to perform, pursuant to the Prime Contract, a copy of which is either attached hereto or separately available to Seller, and which is incorporated herein and integrated by reference.  Buyer's standard Terms and Conditions ("Terms") located at: https://www.darley.

**Exhibit 3**



**Exhibit 4**



**Exhibit 5**



**Exhibit 6**



**Exhibit 7**



**Exhibit 8**



**Exhibit 9**



**Exhibit 10**



**Exhibit 11**



**Exhibit 12**



# Exhibit 13

### Ex. 6 - Echo MAV LLC list of creditors as of June 12, 2025

| Creditor | Amount | Description |
|---|---|---|
| **George McMahan** | $49,455.00 | Lubbock Office Lease |
| 7703 La Salle Avenue, Lubbock, TX 79424 | | |
| | | |
| **Bruce Vollmer** | $36,000.00 | Colorado Springs Lease |
| 6546 N Academy Blvd.: PMB #2113, Colorado Springs, CO 80918 | | |
| | | |
| **Cecil Anderson** | $49,680.00 | Knoxville Office Lease |
| 10301 Loma Drive, Knoxville, TN 37922 | | |
| | | |
| **Circuit Hub** | $400,000.00 | Drone Parts |
| 14 Industrial Dr E, South Deerfield, MA 01373 | | |
| | | |
| **iQinetics Vertiq** | $490,000.00 | Drone parts |
| 3401 Grays Ferry Ave BLDG 200, Philadelphia, PA 19146 | | |
| | | |
| **Vol Case & Containers** | $6,307.00 | Drone cases |
| 328 Warehouse Road Oak Ridge, TN 37830 | | |
| | | |
| **Arrow Electronics** | $150,000.00 | Drone Parts |
| 155 Chain Lake Dr., Suite 27, Halifax, NS B3S 1B3 Canada | | |
| | | |
| **NW Blue LLC** | $50,000.00 | Controllers |
| 3632 SW Baird St Unit 5, Portland, OR 97219 | | |
| | | |
| **Kutta Technologies, LLC** | $20,000.00 | Controllers |
| 2075 W Pinnacle Peak Rd., Phoenix, AZ 85027 | | |
| | | |
| **Seek Thermal** | $120,000.00 | Drone Parts |
| 6300 Hollister Ave, Santa Barbara, CA 93117 | | |
| | | |
| **Microhard Systems** | $150,000.00 | Drone Parts |
| 150 Country Hills Landing NW, Calgary, Alberta, T3K 5P3 Canada | | |
| | | |
| **Telum Development Group** | $337,000.00 | Consulting |
| 1001 S Main St., Suite 49, Kalispell, MT 59901 | | |
| | | |
| **Michael Hodges** | $280,000.00 | Back Pay |
| 106 Broken Horn Trail, Fort Worth, TX 76126 | | |
| | | |
| **Passage Consulting Group, LLC** | $80,000.00 | Consulting |
| PO Box 8036, Horseshoe Bay, TX 78657 | | |
| | | |
| **Industrial Electronics Service, Inc** | $187,674.00 | Drone Parts |
| 122 Kwickway Lane, Gray, TN 37615 | | |
| | | |
| **Republic Capital Access** | $20,000.00 | Debt financing |
| 2411 Dulles Corner Park, Suite 625, Herndon, VA 20171 | | |
| | | |
| **Hybrid Project LLC** | $317,850.00 | Drones |
| 590 Holston Private Drive, Blountville, TN 37617 | | |

| | | |
|---|---|---|
| **Booz Allen Hamilton** | $94,655.00 | Tactical Phones |
| 160 Brooks Rd., 2nd Fl., Rome, NY 13441 | | |
| | | |
| **American Express** | $238,476.23 | Company CC |
| P.O Box 981535 El Paso, TX 79998 | | |
| | | |
| **Uplinq Inc** | $38,740.00 | Accounting |
| 7014 East Camelback Road, Suite 71, Scottsdale, AZ 85251 | | |
| | | |
| **Nate Garrison** | $210,000.00 | Back Pay |
| 2609 Alex Overlook Way, Clarksville, TN 37043 | | |
| | | |
| **Outlaw Solutions Group, LLC** | $894,500.00 | Back Pay |
| 6310 Genoa Ave Suite B, Lubbock TX 79424 | | |
| | | |
| **Horizon 31** | $1,456,985.22 | Agreed Judgment |
| 632 Tree Ridge Rd., Knoxville, TN 37922 | | |
| | | |
| **Irradiate LLC** | $13,500.00 | Security |
| 230 N Caldwell Cir., Downingtown, PA 19335 | | |
| | | |
| **Clear Path Marketing** | $44,900.00 | Marketing |
| 5 N. Merchant St., Unit 1116, American Fork, UT 84003 | | |
| | | |
| **Kenneth Porter** | $45,000.00 | CFO |
| 575 Lynnhaven Parkway, Suite 260, Virginia Beach, VA 23452 | | |
| | | |
| **BS Solutions n/k/a Drones From Scratch LLC** | $9,000.00 | Vehicle Lease |
| 2539 Shady Meadow Lane, Knoxville, TN 37932 | | |
| | | |
| **Total** | $5,789,722.45 | |